JAMES R. HAY, Respondent, v. THOMAS C. PLATT, as President of the United States Express ·Company, Appellant.

*Brokers — commissions on sale of real estate — when they are earned.*

In an action brought by James R. Hay to recover commissions for services alleged to have been rendered as a real estate broker in having made a sale to the Union Trust Company of certain premises which belonged to the United States Express Company, it appeared that Hay had had but one interview (sought by himself) with Thomas C. Platt, the president of the express company, in which Platt said, in effect, that the Union Trust Company, or anyone else, could have the property for $400,000, which price Hay, in June, 1886, two years before the sale was made, stated to the vice-president of the Union Trust Company, who said the property was available, but that the Union Trust Company did not want it until it had finished negotiations for certain other lots. Hay did not report this interview to Platt, or ever bring to him an offer for the property.

In 1888 the property was sold by Platt to the Union Trust Company without the intervention of Hay, and it appeared that, in the meantime, Platt had had no dealings with Hay.

Upon an appeal from a judgment in favor of the plaintiff:

*Held*, that the judgment could not be sustained.

That, in order to recover commissions, the broker must be the procuring cause of the sale; that is to say, he must produce a customer ready and willing to enter into a contract upon the terms of his principal.

That where the broker had failed in this respect, and had abandoned further efforts, the principal violated no right of the broker in negotiating with the proposed customer directly and independently.

Appeal by the defendant Thomas C. Platt, as president of the United States Express Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 27th day of June, 1892, upon a verdict for the plaintiff for $2,420.67, after a trial at the New York Circuit before the court and a jury; and also from an order of said court, made on the 23d day of June, 1892, denying a motion for a new trial on the minutes.

*Albert B. Boardman*, for the appellant.

*Page & Taft*, for the respondent.

BARRETT, J. :

This action is for the recovery of a broker's commission upon the sale of certain real estate belonging to defendant. The main question is, whether the plaintiff was the procuring cause of the sale.

. It appears from the plaintiff's testimony that he had nothing to do with the immediate negotiations which resulted in the sale, and, in truth, knew nothing of the final transaction until it was completed. He bases his claim upon the fact that some two years prior to the sale he called the purchaser's attention to the property and informed such purchaser that it could be bought for the sum which was finally paid for it. The plaintiff had but a single interview with the defendant's president (Mr. Platt) upon the subject, and that interview he sought. It lasted ten or fifteen minutes, and the substance of it was that Mr. Platt said that Mr. King (president of the Union Trust Company), or anyone else, could have the property for $400,000. That was the last Platt saw or heard of the plaintiff in the matter for about three years, when he called a second time to ask for a commission. At this time the sale had been closed for about a year. All that the plaintiff did after his first interview with Platt was to inform Mr. King, and also Mr. McLean (who was the vice-president of the Union Trust Company), what Platt had said. This was in June, 1886. These gentlemen expressed surprise at the price, and made no offer of any kind. McLean finally said — we quote the plaintiff's testimony: "Well, that is available property, but we do not want that property until we are through with our negotiations for the properties on the corner of Broadway and Wall;" and after a little further conversation that interview ended.

The plaintiff, it will be observed, did not report back to Platt the result of this interview with Messrs. King and McLean, nor, in fact, did he do anything further in the matter, although he says he had interviews with representatives of the trust company extending down to August of the same year. These interviews, however, resulted in no offer for the property, and were not reported to Mr. Platt. There the matter rested until some two years later, when the property was independently sold.

It is entirely clear that, upon this state of facts, the plaintiff had

no cause of action. He did nothing whatever to bring about the sale, except to inform Mr. King that the property could be purchased for $400,000. He *was* authorized to sell the property for this sum, but he failed to bring the trust company to Platt's terms; failed, in brief, to secure a purchaser. He claims, however, that the negotiations between the two companies were simply held in abeyance until the trust company could ascertain whether certain neighboring property was also to be had. But there were no continuous negotiations between these companies during these two following years, and the plaintiff never even suggested to Mr. Platt that in case the trust company ultimately succeeded in securing the neighboring property, it might then offer the defendant $400 000 for the real estate in question.

It was really immaterial why, or for what reason the ttrus company failed to come forward in June, 1886, and offer the defendants their price for the property. The price was *not* offered, and that ended the matter. The parties were never brought together, and the plaintiff was in no sense the procuring cause of the sale, which was ultimately made. If the plaintiff, upon the facts of this case, is entitled to a commission, it must be simply upon the ground that his information suggested to the defendant's officers a possible customer for their property. But, of course, such a position is entirely untenable. The broker must be the procuring cause of the sale. He must produce a customer ready and willing to enter into a contract upon the employer's terms. (*Wylie* v. *Marine National Bank*, 61 N. Y., 415; *Sibbald* v. *Bethlehem Iron Company*, 83 id., 378; *White* v. *Twitchings*, 26 Hun, 503.)

The employer violates no right of the broker in negotiating directly with the proposed customer after the broker has failed to bring such customer to the specified terms, and has abandoned his efforts in that direction. Nor is he liable for a commission under such circumstances, if his independent negotiation results in a sale. (Same cases.)

The broker may, as was said by FINCH, J., in *Sibbald* v. *Bethlehem Iron Company* (*supra*), "have introduced to each other, parties who otherwise would have never met; he may have created impressions which, under later or more favorable circumstances, naturally lead to, and materially assist in the consummation of a sale; he may

have planted the very seeds from which others reap the harvest; but all that gives him no claim."

The plaintiff's case is clearly within these principles. He endeavored here to sell, and he failed. He told Mr. Platt that he thought he had a customer in the trust company. It may have been the recollection of this statement which induced the defendants, two years afterwards, to apply directly to the officers of this trust company, and to tell them that if they wanted the property they must speak at once, or it would be sold to someone else.

In other words, Platt probably thought he would try and sell the property himself to one who formerly had been suggested as a possible purchaser This is what it comes to and all it comes to. The suggestion that during the two years of non-action Platt was waiting for the trust company to close its other negotiations, and that, in fact, both companies were abiding the result of these other negotiations is entirely without support in the evidence.

We have not overlooked the testimony with regard to conversations between the plaintiff and Mr. Wood, the defendant's treasurer, between June, 1886, and sometime in the year 1888. These conversations, however, were clearly inadmissible. Mr. Wood had no authority to bind the defendants and the conversations, in question, were not in the line of the treasurer's duty. They were simply desultory observations made at casual meetings outside of the company's office, and were in no sense admissible as part of the *res gestæ.*

But, further, even if admissible, they had no probative value with regard to the real issues. The plaintiff says they " were generally to the effect that a sale would be finally consummated of the United States Company's property to the Union Trust Company," and that " Mr. Wood said he hoped that would be the result; that he would be glad to see me (plaintiff) earn so handsome a commission."

Such loose talk did not alter the facts; that the plaintiff abandoned all effort in the matter; that he never brought the parties together; that he never procured an offer of $400,000; that he was not to quote the language used in *White* v. *Twitchings (supra),* " the procuring cause of the identical contract of sale," and that the sale was the result of independent negotiations between the parties, to which they were not moved by any act of the plaintiff's.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, J., concurred.

VAN BRUNT, P. J.:

I concur. Simply because a broker calls the attention of a particular person to a piece of property, as being for sale, does not give him a lien upon that person in respect to that property for all time to come.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.