(37 App. Div. 518.)

### FREEDMAN et al. v. HAVEMEYER.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

BROKERS—RIGHT TO COMMISSION.

    Defendant authorized certain brokers to sell his property at $300,000. They procured an offer for $275,000, which defendant declined. Subsequently plaintiffs offered the same amount for certain customers, whose names he disclosed to defendant. The offer was refused, but defendant authorized him to sell for $285,000. Later the offer of the former brokers was accepted, and defendant, on making the deed, learned that the sale had been made to plaintiffs' customers. *Held* that, as defendant acted in good faith in making the sale, plaintiffs were not entitled to commissions, since he had the right to place his property with as many brokers as he saw fit.

Appeal from trial term, New York county.

Action by Joseph Freedman and another against Henry O. Havemeyer to recover commissions for the sale of defendant's real estate. From a judgment for plaintiffs, and order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John E. Parsons, for appellant.

Joseph Fettretch, for respondents.

McLAUGHLIN, J.　Upon the trial it appeared that the defendant in October, 1894, purchased the real estate referred to in the complaint from one of the plaintiffs, and within a short time thereafter authorized a firm of real-estate brokers (Harnett & Co.) to sell the same for $300,000. This firm thereupon advertised the premises for sale, and from time to time reported to the defendant the offers made for the property and what they could sell it for. On different occasions, and once at least a year before a sale was actually made, they informed him that they could sell for $275,000, but he declined to sell at that price. In March, 1896, Harnett & Co. again offered that sum, which he then accepted, and a written contract was thereupon entered into between him and one Edward C. Wilde. The defendant then supposed that Wilde was acting for himself in making the purchase, but, when the time arrived for the delivery of the deed, he for the first time ascertained that Wilde had acted on behalf of Frederick G. Jennings and John G. McCullough, and the conveyance was made to them. It also appeared that the plaintiffs ascertained in some way, just how or when the record does not disclose, that the real estate was for sale, and of their own volition went to the defendant, prior to the execution of the Wilde contract, and offered $275,000 for it. The offer was declined, the defendant saying that he would take $290,000. Subsequently the plaintiff Freedman had a conversation with the defendant, and then informed him that he was negotiating for a sale of the property to "Frederick G. Jennings, on behalf of Mr. McCullough, and for himself as one of the heirs, or, rather, on behalf of his wife and other members, of the Trenor Park estate"; and the defendant said: "I have no negotiations with those people. You may go on, and, if I sell them the property, you will be entitled to a commission." Later, another interview was had, in which the plaintiff Freedman sought to induce the defendant to reduce his price, and he then informed Freedman that he would take $285,000, and that was the lowest price for which he would sell the property, and that there was no use of bothering him by offering less. It also appeared that one of the plaintiffs prior to the Wilde contract had several interviews with Frederick G. Jennings, and endeavored to induce him to purchase the property, but without effect. Mr. Jennings testified, and his testimony was not contradicted, that the purchase was made by Wilde on behalf of himself and Mr. McCullough; that the contract was drawn by Wilde; that he neither saw nor talked with the plaintiffs, or either of them, in connection with the contract or the conveyance made in pursuance of it; and that at the last interview he had with the plaintiff Freedman he was informed by him that the defendant wanted $285,000 for the property.

Assuming that the plaintiffs had authority to sell, the obligation which they undertook, as a condition of their right to demand compensation, was the production of a purchaser ready and willing to purchase on the defendant's terms. Sibbald v. Iron Co., 83 N. Y. 378; Condict v. Cowdrey, 139 N. Y. 273, 34 N. E. 781. His terms to them were not less than $285,000. Did they produce such a purchaser? It is not even claimed that they did. But it is said they were negotiating with Mr. Jennings, one of the persons to whom the conveyance

was subsequently made, and that while negotiations were pending the defendant made the sale. What of it? The defendant did not know it, and, if he did, it would have made no difference, because such negotiations had not resulted in an actual, or even a prospective, agreement, and the permission to sell at $285,000 was not an exclusive one or for a fixed time, and it did not prohibit the defendant from selling to others, if the sale was made in good faith. A person may place his property with as many brokers to sell as he sees fit, but it is only the one who produces a buyer, ready and able to purchase on the employer's terms, that becomes entitled to commissions. Here the sale was actually made by Harnett & Co. The plaintiffs had nothing to do with it. They were not connected with the contract or conveyance in any way. Indeed, the plaintiffs did not know until just before the action was tried, as appears from an application to amend the complaint, to whom in fact the conveyance was actually made. The defendant, in the absence of anything showing bad faith on his part, had a right to sell through Harnett & Co., and there is nothing in the record to show that in entering into the contract with Wilde, or in executing the conveyance in fulfillment of it, he did not act in good faith, or that he intended to defraud the plaintiffs or injure them in any way. It would be going much further than any of the cases have heretofore gone, and, in our judgment, would establish a most dangerous precedent, to hold that, under the facts set out in this record, the defendant was obligated to pay commissions to the plaintiffs.

We are of the opinion, therefore, that the trial court erred in not granting defendant's motion to dismiss the complaint made at the close of the plaintiffs' case, and renewed at the close of the whole case; and for the errors thus committed the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.