HORACE C. PHINNEY and GEORGE B. CORSA, Respondents, v. DENISON P. CHESEBRO and ALFRED E. DAVIDSON, Appellants.

*Real estate broker — not entitled to commissions on a sale, afterward effected by the owner, to one with whom the broker had negotiated.*

A broker employed by an owner of real property to effect a sale or lease thereof, who succeeds in effecting the lease and endeavors unsuccessfully to effect a sale of such property to the lessee, is not entitled to recover commissions upon a sale of the property subsequently to the lessee, where it appears that such sale was effected by the owner as the result of negotiations begun by him after the broker's efforts had terminated.

APPEAL by the defendants, Denison P. Chesebro and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the

FIRST DEPARTMENT, NOVEMBER TERM, 1903. [Vol. 87.

21st day of March, 1903, upon the verdict of a jury, and also from an order entered in said clerk's office on the 24th day of March, 1903, denying the defendants' motion for a new trial made upon the minutes.

*Herbert Goldmark*, for the appellants.

*Joseph H. Beall*, for the respondents.

INGRAHAM, J.:

The defendants were the owners of a piece of property in the city of New York, upon which they were erecting a building to be used as a hotel. They placed this property in the hands of several real estate brokers to be leased or sold. The plaintiffs, as brokers, negotiated a lease of the building to Mr. Knott for fifteen years, at a rental of $9,250 a year, and for negotiating this lease the plaintiffs were paid by the defendants their commission, amounting to $1,387.50. At the time the property was placed in the plaintiffs' hands the defendants had authorized them to either procure a purchaser of the property or a tenant, and acting under this authority they conducted the negotiations which resulted in the lease, which was executed on April 30, 1900. During the negotiations for the lease the plaintiffs endeavored to persuade Knott to purchase the property, but he refused to purchase. After Knott had made this lease the property still remained in the plaintiffs' hands for sale. Subsequently, and after the 1st of August, 1900, the defendants sold the property to Knott, and the plaintiffs claim that they were entitled to commissions for the sale of the property in addition to the commissions that they had received for making the lease. One of the defendants testified that he had left the property with the plaintiffs for sale and expected to pay them a commission if they had sold it, but that the sale was made entirely without the intervention of the plaintiffs, and in consequence of the negotiations instigated by the defendant with a son of the tenant. One of the plaintiffs testified that they had two or three interviews with Knott after the lease, at which the subject of the purchase of the property was discussed, but at those interviews Knott had refused to purchase the property, and that the matter then rested. Knott, who was the purchaser of the property, testified that the contract for the purchase was made on the 6th of August, 1900; that there was nothing done with

regard to the purchase of the property between the plaintiffs and himself; that he never at any time negotiated for the purchase of the property with them, and that three days before he purchased the property he had no idea that he would ever purchase it; that his first idea of the purchase came in consequence of a communication received from his son, who said that the defendants had made him an offer of the property on very reasonable terms; that the next day the witness went to see the defendant Chesebro, and the day after he purchased the property; that the plaintiffs had nothing whatever to do with the transaction; that he never saw either of the plaintiffs after the lease until he bought the property, except that they might have come into his place of business with the plans of the building a few days after the lease. David Knott, a son of the purchaser, testified to a conversation with Mr. Chesebro in regard to the sale of the property; that Mr. Chesebro said that he would like to sell the property and he wanted to know if Mr. Knott would not buy it; that this was some time in July, just previous to the signing of the contract for the purchase. At the end of the testimony the defendants asked the court to direct a verdict in favor of the defendants. That motion was denied and the defendants excepted. The court submitted but one question to the jury, and that was whether the plaintiffs had shown that they had actually procured Knott to become the purchaser, and the jury found a verdict for the plaintiffs. The defendants subsequently moved to set aside the verdict as against the weight of evidence, and the defendants appeal from the order denying that motion.

We think that the verdict was against the weight of evidence. Assuming that subsequent to the lease the brokers at two or three interviews suggested to Knott that he purchase the property, it is undisputed that Knott declined that offer and that the plaintiffs' effort to sell the property to Knott there ceased. It is quite evident that from that time on the plaintiffs abandoned all attempts to consummate a sale to Knott. They had performed their services in making the lease, for which they had been paid. The negotiations for a sale of the property were at an end. The evidence is uncontradicted that the negotiations which finally resulted in the sale were commenced in consequence of an offer made by one of the defendants to Mr. Knott's son a few days before the sale was finally

consummated and that nothing that the plaintiffs did had any relation. to or influence upon this negotiation. Under these circumstances it seems to me quite clear that the finding of the jury that the plaintiffs were the procuring cause of this sale is without evidence to sustain it. There is no evidence of any communication between the plaintiffs and Knott after the month of May, when, according to plaintiffs' testimony, Knott had refused to purchase, more than two months before the negotiations were instituted which resulted in the actual purchase of the property. That to entitle a broker to recover commissions for the sale of real estate he must be the procuring cause of the sale is too well settled to require the citation of authorities. " It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. * * * He may have introduced to each other parties who otherwise would have never met ; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale ; he may have planted the very seeds from which others reap the harvest, but all that gives him no claim. It was part of his risk that, failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors." (*Sibbald* v. *Bethlehem Iron Company*, 83 N. Y. 378.) In *Hay* v. *Platt* (66 Hun, 488), Mr. Justice BARRETT, in delivering the opinion of the General Term, says : " The employer violates no right of the broker in negotiating directly with the proposed customer after the broker has failed to bring such customer to the specified terms, and has abandoned his efforts in that direction. Nor is he liable for a commission, under such circumstances, if his independent negotiation results in a sale." (See, also, *Freedman* v. *Havemeyer*, 37 App. Div. 518.)

It follows that the judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.