PHINNEY et al. v. CHESEBRO et al.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

1. BROKERS—ACTION FOR COMMISSION—PROCURING SALE—EVIDENCE.

　　Where, in an action by a broker for a commission for finding a purchaser for a building, it appeared that the broker had two or three interviews with the purchaser, in which the purchaser declined to buy, and that there was no communication between the broker and the purchaser for more than two months before negotiations between the owner and the purchaser's son, which led to a sale within a few days, a finding that the broker was the procuring cause of the sale was against the weight of the evidence.

Appeal from Trial Term, New York County.

Action by Horace C. Phinney and another against Denison P. Chesebro and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert Goldmark, for appellants.
Joseph H. Beall, for respondents.

INGRAHAM, J.   The defendants were the owners of a piece of property in the city of New York, upon which they were erecting a building to be used as a hotel.   They placed this property in the hands of several real estate brokers to be leased or sold.   The plaintiffs, as brokers, negotiated a lease of the building to Mr. Knott for 15 years at a rental of $9,250 a year, and for negotiating this lease the plaintiffs were paid by the defendants their commission, amounting to $1,387.50. At the time the property was placed in the plaintiffs' hands the defendants had authorized them to either procure a purchaser of the property or a tenant, and, acting under this authority, they conducted the negotiation which resulted in the lease which was executed on April 30, 1900.   During the negotiations for the lease the plaintiffs endeavored to persuade Knott to purchase the property, but he refused to purchase.   After Knott had made this lease, the property still remained in the plaintiffs' hands for sale.   Subsequently, and after the 1st of August, 1900, the defendants sold the property to Knott; and the plaintiffs claim that they were entitled to commissions for the sale of the property, in addition to the commissions that they had received for making the lease.   One of the defendants testified that he had left the property with the plaintiffs for sale, and expected to pay them a commission if they had sold it, but that the sale was made entirely without the intervention of the plaintiffs, and in consequence of the negotiations instigated by the defendant with a son of the tenant. One of the plaintiffs testified that they had two or three interviews with Knott after the lease at which the subject of the purchase of the property was discussed, but that at those interviews Knott had refused to purchase the property, and that the matter then rested.   Knott, who was the purchaser of the property, testified that the contract for the purchase was made on the 6th of August, 1900; that there was nothing done with regard to the purchase of the property between the plaintiffs and himself; that he never at any time negotiated for the purchase of the property with them, and that three days before he purchased the property he had no idea that he would ever purchase it; that his first idea of the purchase came in consequence of a communication received from his son, who said that the defendants had made him an offer of the property on very reasonable terms; that the next day the witness went to see the defendant Chesebro, and the day after he purchased the property; that the plaintiffs had nothing whatever to do with the transaction; that he never saw either of the plaintiffs after the lease until he bought the property, except that they might have come into his place of business with the plans of the building a few days after the lease.   David Knott, a son of the purchaser, testified to a conversation with Mr. Chesebro in regard to the sale of the property; that Mr. Chesebro said that he would like to sell the property, and he wanted to know if Mr. Knott would not buy it; that this was some time in July, just previous to the signing of the contract for the purchase.   At the end of the testimony the defendants asked the court to direct a verdict in favor of the defendants.   That motion was denied, and the defendants excepted.   The court submitted but one question to the jury, and that was whether the plaintiffs had shown that they had actually procured Knott to become the purchaser, and

the jury found a verdict for the plaintiffs.  The defendants subsequently moved to set aside the verdict as against the weight of evidence, and the defendants appeal from the order denying that motion.

We think that the verdict was against the weight of evidence.  Assuming that subsequent to the lease the brokers, at two or three interviews, suggested to Knott that he purchase the property, it is undisputed that Knott declined that offer, and that the plaintiffs' effort to sell the property to Knott there ceased.  It is quite evident that from that time on the plaintiffs abandoned all attempts to consummate a sale to Knott. . They had performed their services in making the lease, for which they had been paid.  The negotiations for a sale of the property were at an end.  The evidence is uncontradicted that the negotiations which finally resulted in the sale were commenced in consequence of an offer made by the defendants to Mr. Knott's son a few days before the sale was finally consummated, and that nothing that the plaintiffs did had any relation to or influence upon this negotiation.  Under these circumstances, it seems to me quite clear that the finding of the jury that the plaintiffs were the procuring cause of this sale is without evidence to sustain it.  There is no evidence of any communication between the plaintiffs and Knott after the month of May, when, according to plaintiffs testimony, Knott had refused to purchase, more than two months before the negotiations were instituted which resulted in the actual purchase of the property.  That, to entitle a broker to recover commissions for the sale of real estate, he must be the procuring cause of the sale, is too well settled to require the citation of authorities.  "It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for unsuccessful efforts.  The risk of failure is wholly his.  The reward comes only with success.  *  *  *  He may have introduced to each other parties who otherwise would have never met.  He may have created impressions which, under later and more favorable circumstances, naturally lead to, and materially assist in the consummation of, a sale.  He may have planted the very seeds from which others reap the harvest.  But all that gives him no claim.  It was part of his risk that, failing himself, not successful in fulfilling his obligation, others might be left, to some extent, to avail themselves of the fruit of his labors."  Sibbald v. The Bethlehem Iron Company, 83 N. Y. 378, 38 Am. Rep. 441.  In Hay v. Platt, 66 Hun, 488, 21 N. Y. Supp. 362, Mr. Justice Barrett, in delivering the opinion of the General Term, says:

"The employer violates no right of the broker in negotiating with the proposed customer after the broker has failed to bring such customer to the specified terms, and has abandoned his efforts in that direction; nor is he liable for a commission, under such circumstances, if his independent negotiations result in a sale."

See, also, Freedman v. Havemeyer, 37 App. Div. 518, 56 N. Y. Supp. 97.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.  All concur.