[No. 8003.   Department One.   June 4, 1909.]

EDWIN P. FRINK *et al.*, *Appellants*, v. CARLETON GILBERT, *Respondent*.[1]

BROKERS—COMMISSIONS—SEVERAL BROKERS—EFFICIENT CAUSE OF SALE. Brokers are not entitled to commissions on a sale to a customer originally found by them, but who was unable to meet the terms, where, after negotiations had ceased and the matter was abandoned, another agent, with whom the property had also been listed, took up the matter independently and induced the customer to make the purchase, being enabled to do so by the help of friends who came to his assistance; since, of several brokers, the one whose effort was the efficient cause of the sale is entitled to recover the commissions.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered September 29, 1908, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to recover a broker's commission. Affirmed.

*Jay C. Allen*, for appellants.

*McClure & McClure*, for respondent.

CHADWICK, J.—Prior to April 9, 1908, the defendant was the owner of a certain lodging house and family hotel in Seattle, Washington, known as the "Stetson," and was desirous of selling it. Prior to that time he had entered into an oral contract with the plaintiffs to sell his furniture, fixtures, and leasehold interest for the sum of $13,000, and agreed to pay them a commission of five per cent. The purchase price was to be paid $5,000 cash, a mortgage of $2,400 to be assumed, and $5,600 to be secured, or real estate in either Seattle or Portland, Oregon, would be taken in exchange. Plaintiffs advertised this and other property in Seattle and Portland papers. The advertisement fell under the notice of one W. F. Muehe at Portland, who, after some correspondence,

[1]Reported in 101 Pac. 1088.

came to Seattle and called upon plaintiffs, who showed him several hotel properties, including the Stetson. Muehe and the defendant, in presence of the plaintiff Edwin P. Frink, after looking over the Stetson, engaged in conversation about prices and terms. Defendant stated the terms, as we have hereinbefore set them out. Muehe was willing and able to pay the $5,000 cash, and agreed to assume the $2,400 mortgage, but was unable to either pay or offer security for the remainder of the purchase price within the terms made and insisted upon by defendant. He then offered to secure the balance by a second mortgage on the furniture and fixtures. This was refused by defendant. This offer Muehe says he does not remember, but we are assuming that it is so. He says, in excuse of his failure to remember the alleged offer of a second mortgage, that he was not at that time seriously considering the Stetson, because plaintiffs were trying to sell him the Knickerbocker, a property of like character in which he felt a greater interest. Plaintiff Edwin P. Frink says that there was some further conversation about the possibility of Mr. Muehe's brother in Portland furnishing security for him. In the conversation defendant announced his intention of going to Portland. Frink then said to him, "You go to Portland. If you don't sell your hotel in Portland by the time you get back, Mr. Muehe will be still in the city, and we will be glad to take the matter up with you at that time. Mr. Muehe possibly can arrange his cash, by the time you return, to take this."

From that time on Muehe did not come in contact with plaintiffs with reference to the Stetson or any of the properties which he had looked over with them. Contrary to his announced intention to return to Portland the first of the following week, he returned on Saturday night. On Sunday evening Mrs. Corinne Simpson, a real estate agent in Seattle, called at the home of one J. L. Ford. It is not disclosed that either Ford or Mrs. Simpson knew anything of the negotiations between Muehe and plaintiffs. In casual conversation

it was suggested by the Fords, that they had friends, Mr. and Mrs. Muehe, from Portland, who were visiting in Seattle; that they were there to buy a hotel, and they would be glad to have Mrs. Simpson meet them. Accordingly they called up the hotel where they had registered, and were told that the Muehes had returned to Portland. Mrs. Simpson was asked what she had to offer that was a good buy, and she said she had the Stetson. She talked it over with the Fords, and upon their advice, she communicated with Muehe by telephone, advising him that it was Mr. Ford's desire that he return at once and look over the Stetson. Muehe then told her that he knew all about the Stetson, but that he could not handle it; that he could not furnish the securities that Mr. Gilbert insisted upon.

On the next day another conversation was had, in which Muehe still insisted that he could not take the property. Mrs. Simpson then told him, that the security would be arranged by Mr. Ford; that he insisted upon it. He at first refused to allow his friend to furnish this security, but finally consented. Mr. Ford then put up $1,000 cash, which was turned over to defendant to bind the bargain, and finally put up the whole difference in money rather than incumber his property. A slight reduction was made because of the cash payment. The property was then made over by defendant to Muehe. Plaintiffs brought this action to recover a commission on the sale. Judgment was rendered in the court below in favor of defendant, and plaintiffs have appealed.

It is a fundamental proposition that a real estate agent, who produces a customer who is ready, willing, and able to buy, is entitled to his commission, although the vendor takes the matter in his own hands and sells to another. This rule has been frequently announced by this court. *Barnes v. German Savings & Loan Society*, 21 Wash. 448, 58 Pac. 569; *Von Tobel v. Stetson & Post Mill Co.*, 32 Wash. 683, 73 Pac. 788; *Elmendorf v. Golden*, 37 Wash. 664, 80 Pac. 264. But in the case at bar it must be borne in mind that, while ap-

pellants had introduced Mr. Muehe to respondent, the property was at the same time listed for sale with Mrs. Simpson, who had an equal right to find a customer. As expressed by respondent, "The man who gets the money here first is the man who gets the property." It is true that, prior to closing the sale, Mrs. Simpson knew of the intervention of appellants; but it is not made to appear that the ethics of the real estate business demanded of her a cessation of her effort to sell the property. She was the first to procure a customer who met all the requirements of readiness, willingness, and ability. This she accomplished through the generosity of Mr. and Mrs. Ford. Appellants had introduced Muehe as a prospective customer. He was ready and willing, but he was not able to buy on the terms proposed. His attitude toward the deal was such that the court below was warranted in finding that the sale would not have been accomplished by appellants or on the terms proposed by them. Mr. Muehe says, "Well, the facts were these, that Mr. Ford offered to go my security—made it possible for me to buy the Stetson."

Where several brokers have the same property listed for sale, although each has contributed towards the result, the one whose effort was the efficient cause of the sale is entitled to recover the commission. The leading case upon this subject, and one most frequently cited and relied upon by the courts, is that of *Vreeland v. Vetterlein*, 33 N. J. 247, wherein the court said:

"Where the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy, and quits him without having effected a sale, he is aware that he runs the risk of such person falling under the influence of his competitor—and in such case he may lose his labor. This is a part of the inevitable risk of the business he has undertaken. . . . Now in this competition, the vendor of the property is to remain neutral; he is interested only in the result. But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he

refuse to complete the bargain? Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat with him on the subject? There is no legal principle upon which such a position could rest. . . . And if, therefore, it should be known to the vendor of the property that the agent, who introduces a purchaser to him has, by the usual arts of competition, taken such purchaser out of the hands of his rival, I am not aware of anything in the law which would justify such vendor in a refusal to complete the contract. . . . In the absence of all collusion on the part of the vendor, the agent, through whose instrumentality the sale is carried to completion, is entitled to the commissions."

To the same effect are the following authorities: *Higgins v. Miller*, 109 Ky. 209, 58 S. W. 580; *Carper v. Sweet*, 26 Colo. 547; *Duval v. Moody*, 24 Tex. Civ. App. 627, 60 S. W. 269; *Johnson v. Lord*, 54 N. Y. Supp. 922; *Freedman v. Havemeyer*, 37 App. Div. 518, 56 N. Y. Supp. 97; *De Zavala v. Royaliner*, 84 N. Y. Supp. 969; *Whitcomb v. Bacon*, 170 Mass. 479, 49 N. E. 742, 64 Am. St. 317; *Alden v. Earle*, 121 N. Y. 688, 24 N. E. 705; *Bowser v. Mick*, 29 Ind. App. 49, 62 N. E. 513.

In this case Mr. Muehe bought through an entirely independent source, having given up any thought of buying through appellants. It may be that it would have been the graceful thing on his part to say, "I have talked this matter over with appellants and prefer to buy through them;" but he was not legally bound to do so, nor is there any testimony to show that he would have been able to do so, for his friends who furnished the money and closed the deal seem to have been actuated by a dual desire—to serve him, and at the same time assist Mrs. Simpson to earn a commission on the trade. Nor was respondent bound to refuse the customer when presented by Mrs. Simpson, he having the readiness, willingness, and ability to buy. Respondent was neutral in the transaction, and cannot therefore be bound.

"It follows, as a necessary deduction from the established rule, that a broker is never entitled to commissions for un-

successful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligation, others might be left to some extent to avail themselves of the fruit of his labors. As was said in *Wylie v. Marine National Bank* (61 N. Y. 416, *supra*), in such a case the principal violates no right of the broker by selling to the first party who offers the price asked, and it matters not the sale is to the very party with whom the broker had been negotiating. He failed to find or produce a purchaser upon the terms prescribed in his employment, and the principal was under no obligation to wait longer that he might make further efforts. The failure, therefore, and its consequences were the risk of the broker only." *Sibbald v. Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441.

See, also, *Ward v. Fletcher*, 124 Mass. 224.

The cases in this court, of *Von Tobel v. Stetson & Post Mill Co.*, *supra*, and other cases following it, go no further than to declare the general rule that a principal who has placed property in the hands of an agent cannot thereafter deal with the customer on his own account, or through a broker thereafter employed by him, and defeat the agent's commission. The case here presented falls within a different rule. The property was listed with two agencies, and the only

question open is which one was the efficient procuring cause
of the sale.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., con-
cur.