[No. 12159. Department One. January 8, 1915.]

WILLIAM A. BLACKWOOD, *Respondent,* v. W. R. BALLARD *et al., Appellants.*[1]

BROKERS—COMMISSIONS—EFFICIENT CAUSE — EVIDENCE — SUFFICI-
ENCY. Brokers are not entitled to commissions on a lease to cus-
tomers originally found by them, but who were unable to meet the
terms, where, after negotiations had ceased and the matter was
abandoned, another agent took up the matter independently and ef-
fected a lease with such customers; since, of several brokers, the one
whose effort was the efficient cause of the contract is entitled to the
commissions.

Appeal from a judgment of the superior court for King
county, John S. Jurey, Esq., judge *pro tempore,* entered
December 19, 1913, upon the verdict of a jury rendered in
favor of the plaintiff, in an action on contract. Reversed.

*Bogle, Graves, Merritt & Bogle,* for appellants. To the
effect that an owner may discontinue dealings through one
broker, and afterwards effect a sale or lease through an-
other broker, or with the customer direct, where there is no
question of bad faith, counsel cite: *Sibbald v. Bethlehem
Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Frink v. Gilbert,*
53 Wash. 392, 101 Pac. 1088; *Dore v. Jones,* 70 Wash.
157, 126 Pac. 413; *Parker v. Bruggemann,* 72 Wash. 309,
130 Pac. 358; *Ball v. Dolan,* 21 S. D. 619, 114 N. W. 998,
15 L. R. A. (N. S.) 272; *Naylor v. Ashton,* 20 Cal. App.
544, 130 Pac. 181; *Barney v. Yazoo Delta Land Co.,* 179
Ind. 337, 101 N. E. 96; *Butterfield v. Consolidated Fuel Co.*
(Utah), 132 Pac. 559; *Leonard v. Eldridge,* 184 Mass. 594,
69 N. E. 337; *Platt v. Johr,* 9 Ind. App. 58, 36 N. E. 294;
*Cone v. Keil,* 18 Cal. App. 675, 124 Pac. 548.

*Alexander & Bundy* and *Adair Rembert,* for respondent.
*Contra,* counsel cite: *Elmendorf v. Golden,* 37 Wash. 664,
80 Pac. 264; *Norman v. Hopper,* 38 Wash. 415, 80 Pac.

[1] Reported in 145 Pac. 238.

551; *Grinnell Co. v. Simpson*, 64 Wash. 564, 117 Pac. 391; *Norris v. Byrne*, 38 Wash. 592, 80 Pac. 808; *Duncan v. Parker*, 81 Wash. 340, 142 Pac. 657.

MORRIS, J.—Action to recover a commission as broker, in procuring lessees for a term of fifteen years upon property belonging to appellants. Verdict for respondent for $2,400, upon which judgment was entered, from which this appeal was taken.

The main error relied upon for reversal is that the evidence is wholly insufficient to support the verdict. The facts are about these: In January, 1913, appellants were the owners of a two-story building, on Second avenue, Seattle, which was held by one Friedenberg, and his sublessees under a lease expiring January 1, 1916. Respondent and one Bock were real estate brokers, occupying a suite of offices with appellant W. R. Ballard. Respondent learned that two men named Vigelius and Marston desired to obtain a suitable location on Second avenue for a moving picture theater, and informed Bock of this fact. Bock suggested the building owned by appellants, and negotiations were immediately entered into with a view to obtaining a lease of these premises, Bock acting for appellants and respondent for the prospective lessees. During all these negotiations, all interested parties knew of the Friedenberg lease, and that no lease could be obtained by Vigelius and Marston until satisfactory arrangements had been agreed upon between Friedenberg and appellants; the ability of Friedenberg to enter into any new arrangement depending also upon his ability to make satisfactory arrangements with his subtenants. During these preliminary negotiations, nothing was said as to the payment of any commission, nor did appellants know for whose benefit the new lease was to be obtained, except that, at one time, W. R. Ballard told respondent that he would pay something "if we get together on this proposition." About this time, Ballard was informed who the prospective lessees were. Negotia-

tions continued, and when it looked as though they might be successful, Ballard inquired of Bock what commission he expected, and was informed that a commission of two and one-half per cent on the aggregate rentals for the term would be asked. This would amount to about $12,000, and Ballard refused to consider the proposition further with such a demand, and tendered Bock a check for $500 that had previously been handed him as evidence of good faith. Respondent was then called in, and some conversation was had relative to the payment of a commission, ending in Ballard taking back the check, and it was then agreed that the matter of the commission would be taken up later. The only evidence of any subsequent negotiations for a commission is found in the evidence to the effect that Ballard insisted on fixing the amount, and after some parleying, he offered $2,400 as his outside figure, which respondent agreed to accept. Negotiations culminated in a written contract on February 24, 1913, between W. R. Ballard and Vigelius, as trustee, whereby $19,500 was deposited with Ballard to be used in the purchase of the Friedenberg lease, which being obtained, appellants were to lease the premises to Vigelius for a term of fifteen years, at a monthly rental of $1,800 up to January 1, 1914, $2,600 a month for the next nine years, and $2,800 a month for the remainder of the term. Ballard then endeavored to buy the Friedenberg lease and continued such endeavor until March 19, when Friedenberg wrote him declining to further consider any proposition looking to the surrender of his lease. Ballard exhibited this letter to respondent and Vigelius, informing them that, on account of his inability to successfully treat with Friedenberg the deal was off; returning to Vigelius and Marston the $19,500 which they had deposited with him for the purpose of purchasing the Friedenberg lease. It is apparent that all parties looked upon the refusal of Friedenberg to surrender his lease as ending the matter, and nothing more was done, the complaint in fact reciting that the services of respondent and Bock term-

inated on or about April 1, 1913. Some days after this, Vigelius and Marston were introduced into the office of Henry Broderick, another real estate broker in Seattle, who sought to obtain for them a location on Second avenue, and busied himself with this endeavor for two or three months. In the meantime, Friedenberg had gone to San Francisco leaving his business affairs in the hands of Broderick. The evidence discloses no further negotiations between any of the interested parties to this action.

Respondent, in support of his contention that negotiations continued, says that, at different times, he saw Vigelius and Marston in Ballard's office, and upon his approach they would cease their conversation; and that, on one occasion about April 1, while Ballard was ill at his home, respondent made an appointment for him to see Vigelius, and Vigelius kept the appointment. Vigelius and Marston say that, whenever they met Ballard, they conversed about the matter relative to the possibility of getting Friedenberg to change his mind and surrender his lease, but that they considered the negotiations ended, and any subsequent reference was merely in the forlorn hope that something favorable might yet come out of it. Vigelius also says that, some time in March, Ballard told him that Broderick was Friedenberg's agent, and that he thought he "was in a position to swing the deal." About the last of June, Friedenberg returned from California, and shortly thereafter he called on Broderick, who told him that he knew parties he could interest in the moving picture business providing Friedenberg could get a long time extension of the Ballard lease. Friedenberg then went to Ballard and suggested he could form a corporation to take over the lease if it would be extended, to which Ballard acceded, and negotiations were then entered into between Friedenberg and Ballard as to the terms etc. Friedenberg had no knowledge, in so far as the record shows, that Vigelius and Marston had been negotiating with Broderick or that they were the parties Broderick had in mind when he first suggested the procuring of an ex-  .

tension of his lease. Neither is it shown that Ballard had
any knowledge that Vigelius and Marston were seeking a
lease through Friedenberg. Finally, on July 10, Ballard
gave to E. H. Guie, acting for Friedenberg, a lease for fif-
teen years at a rental of $2,000 a month, except that the
rental for each March during the term was fixed at $1,500.
Friedenberg then bought out his subtenants, expending in
such purchase the sum of $22,500. Some misunderstanding
then arose between Vigelius, Marston and Broderick, and the
negotiations terminated. They were taken up again in a
few days, resulting in an assignment to Vigelius and Marston
of the Guie lease. There is no showing that Ballard had
any knowledge of the relations between Broderick and Vigelius
and Marston, or that he knew that the Guie lease had been
assigned to Vigelius and Marston until long after. Bock
and respondent, upon learning of this assignment, demanded
a commission, which was refused. Bock then assigned his
interest in the commission to respondent, and this suit was
commenced, the complaint reciting, among other things, that
it was agreed that Ballard would pay respondent and Bock
a reasonable commission for their services in procuring the
lease held by Vigelius and Marston under assignment from
Guie, and that $12,000 was such a reasonable commission.

These facts do not support the verdict, which must rest
upon some proof as alleged in the complaint, that respond-
ent and Bock were instrumental in procuring lessees of the
Second avenue property who were ready and able to lease the
premises upon terms satisfactory to appellants and who
became such lessees. To support this allegation, it is further
alleged that the lease of July 10 was made to Guie as trustee
for Vigelius and Marston, and it is evident that there must
be proof of facts supporting such an inference before the ver-
dict can find adequate evidentiary support. There is none.
The lease of July 10 was procured by Friedenberg and taken
in the name of Guie, as trustee for himself or a corporation
he should subsequently organize. Guie was attorney for

Friedenberg, and was at all times acting for Friedenberg and not for Vigelius and Marston. There is absolutely no proof, nor is there a fact from which the inference can be drawn, that Friedenberg or Guie at any time represented Vigelius and Marston or was acting in their interest. The fact that Guie, as a result of the negotiations between Broderick and Vigelius and Marston, subsequently assigned this lease to Vigelius and Marston, is no proof that it was procured for the benefit of Vigelius and Marston in the first instance.

The efforts of respondent and Bock to procure a lease for Vigelius and Marston ceased after March 19. No better evidence of this fact is needed than the repayment of the $19,500. It cannot be doubted but that all parties then considered the matter ended. There was an interim of three months in which no one was seeking to obtain a lease of this property for Vigelius and Marston or any other person, and when Broderick interested himself in seeking a location for Vigelius and  Marston, he was acting independently of respondent and Bock, and confined his efforts to other property until a few days before the Guie lease was obtained. He then approached Friedenberg with the suggestion that he had clients who were desirous of interesting themselves in a moving picture theater, and if Friedenberg could obtain an extension of his lease from appellants, a mutually satisfactory arrangement could be entered into. Friedenberg then interested himself in the matter, in consideration of the benefits that might flow to him from such a lease and not as the representative of Marston and Vigelius, whom, as it has been before said, he did not know. The lease of July 10 is not the lease respondent and Bock were negotiating for. It is true that there are stipulations as to the character of the building etc., similar to those contained in the agreement of February 24. It needs but a glance at the terms of the rental proposed in the agreement of February 24 and those in the lease of July 10 to see that, under the agreement of February 24, appel-

lants would have received many thousand dollars more in rent than under the lease finally made, and could well have afforded to pay respondent and Bock several times the amount demanded by them had they been successful in carrying out the lease as proposed in the contract of February 24. This, of course, is no reason why respondent cannot recover, for, if he had been instrumental in procuring lessees of appellants' property, no change in the terms of the lease finally made could deprive him of his right to compensation. All that he was required to do was to procure lessees who would lease the property upon terms satisfactory to appellants. But this respondent did not do. No efforts of his nor of his assignor culminated in any lease under any terms. They contributed nothing. They were in no sense the efficient cause of the lease of July 10. They induced neither appellants nor Friedenberg to enter into such a lease, and when they failed to negotiate a lease and realizing their failure ceased their efforts, they could not be said to be an efficient cause, because, through the instrumentality of other and independent causes, appellants made a lease of their property, even though such lease through assignment finally became the property of those whom respondent and Bock sought to interest. The controlling principles demanding reversal of this judgment are well set forth in *Frink v. Gilbert*, 53 Wash. 392, 101 Pac. 1088, and the cases there relied upon.

The only evidence referring to the sum of $2,400, the amount of the verdict, was that this amount was finally promised by Ballard if the negotiations initiated by respondent and Bock and covered by the agreement of February 24 should terminate successfully. Respondent does not here contend that he has any cause of action based upon that promise, and is not now seeking to enforce it. Its only purpose in this case was evidentiary of the relations between Ballard and respondent and Broderick. It was not offered nor contended, either in the complaint or in fact, that it was any evidence

to guide the jury in arriving at the amount of recovery, if any.

The judgment is reversed, and since there is no evidence upon which it can rest, the motion for nonsuit should have been granted. Reversed, and remanded with instructions to dismiss.

CROW, C. J., GOSE, PARKER, and CHADWICK, JJ., concur.