[No. 10173.   Department One.   August 27, 1912.]

FREDERIC E. ELMENDORF, *Respondent,* v. JOHN STEEL *et al., Appellants.*[1]

BROKERS—CONTRACT FOR COMMISSION—PERFORMANCE—EVIDENCE— SUFFICIENCY. A broker failed to earn his commissions by securing a purchaser ready to buy on the terms authorized, which required a payment of $4,000 in cash, and the balance of $8,000 in three years, where it appears that there was an existing mortgage for $4,000, the vendor refused to take a second mortgage for the balance, or merely give a contract, and the purchaser was only willing to pay $4,000 in cash, assume the existing mortgage and give a second mortgage for the balance; and the fact that the parties tried to negotiate for additional security is immaterial if not acted upon.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered June 28, 1911, upon the verdict

[1]Reported in 126 Pac. 52.

of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Davis & Rhodes*, for appellants.

*Hamblen & Gilbert*, for respondent.

CHADWICK, J.——This action was brought to recover a commission, alleged to be due because of the performance of the following contract:

| | |
|---|---|
| Date: 8-19-10 | Price: $12,000.00 |
| Street Number: 01501-3-5-7-9 and 11 Mill | |
| Between: Northwest Cor. Maxwell and Mill. | Facing: East |
| Lot 1, Block 21 | Additions: Strattons |
| Size of Lot 50 x 126 | When built: 2 years |
| Mortgage: $4,000.00 Rate 7% | Due: Any time, two years to run |
| Expenses: Improvements | |
| Taxes: $157.00 6- Flats 6 rooms each | Total Income: $2160.00 |
| Ins. $7000.00 separate furnace. | Rents Total exp. 273.00 |
| $30.00 each. | Net Income 1997.00 |
| Heat: Tenant | |
| Light: " | |
| Terms: $4000.00 cash, balance 7% three years | |

Spokane, Wash. Aug. 19, 1910.

In consideration of Elmendorf & Elmendorf listing for sale the property described on other side of this card, I hereby give said firm the sale of said property on terms there mentioned until October 1st, 1910, and thereafter until otherwise notified, and I agree to pay said firm a commission of $500.00 when a purchaser for said property is found.

Signed: John Steel.

It is alleged that, on the 5th day of September, 1910, plaintiff produced a purchaser, ready, willing and able to buy, and that defendant refused to sell the property upon the terms set out in the contract, and that he notified plaintiff that he would not sell the property on the terms contained in the listing contract. We deem it unnecessary to notice the answer, for the reason that our decision on defendant's challenge to the evidence will be decisive of the case. From a verdict in favor of the plaintiff, defendants have appealed.

It seems that one Stanley was acting as an agent for a Mrs.

Adams, and wanted the property for her. He authorized respondent to pay $500 as earnest money. There was a second mortgage on the property, and this whole controversy seems to have arisen over the manner in which the deferred payments should be cared for. Respondent testified as follows:

"Q. And you wanted him to take a mortgage back on the house? A. No, sir. Q. You suggested that he do it? A. No, sir, he said that he would not take a second mortgage, and I told him he could give a contract if he did not want to take a second mortgage. Q. How did the question of the second mortgage arise? A. He asked how he would be secured on the property. He said, 'Do you expect me to take a second mortgage?' And I said, 'You can either take a second mortgage, or you can give a contract.' I said, 'I think that is immaterial to my customer; that is the customary way.' Q. You say, then, that he asked you if you expected him to take a mortgage back on the property, that he was selling? A. Yes, sir, a second mortgage. Q. A second mortgage? A. Yes, sir. Q. You suggested it and he refused, did he? A. He said, 'Do you expect me to take back a second mortgage?' Q. What did you say? A. I said, 'You can either take a second mortgage, or you can give a contract.' I said, 'If you want to give her a deed and get a mortgage back, you can negotiate the paper, or you can give a contract.' I said, 'I think it is immaterial to my client.' Q. And he said he would not take back a second mortgage? A. He said he would not take a mortgage. Q. Did he say he would not take a second mortgage? A. Yes, he said he would not take a second mortgage. Q. Then he asked if you could not give a first mortgage on the Broadway property? A. Yes, sir. Q. And he went over and looked at the property? A. He looked at that same property. Q. He looked at that when you were discussing a trade? A. Yes, sir. Q. Did you tell him that you could not give him a first mortgage on that property on Broadway? A. Yes, sir. Q. Then, provided he would not take a second mortgage on the property that he was selling, the only way left for him to do, if he accepted your terms, was to give a contract? A. Well, I don't know but that a deed in escrow might have done."

Mr. Stanley testified:

"Q. On what terms did you agree to purchase the property? A. I wanted to buy the property for twelve thousand dollars, four thousand dollars in cash, four thousand dollars in two years, and assume the mortgage for four thousand dollars. Q. You were prepared to give a payment of four thousand dollars? A. Yes, sir, after a proper investigation of the title."

We think it cannot be successfully claimed that these negotiations can be accepted as a performance of the contract. The listing contract called for a payment of $4,000 and the balance in three years at 7 per cent. There was an existing mortgage for $4,000, and it may have been the intention of the owner to discharge this mortgage, thus keeping the legal title under his absolute control until the balance of the purchase price was paid, or to take a mortgage back for the amount of the deferred payments, thus protecting his investment or equity in the property from the hazards of an outstanding prior encumbrance. Appellant was not bound to accept the terms offered, or any terms, unless expressed in, or fairly implied from, the written terms of the contract. The rule is:

"In order to be entitled to his commissions, a broker employed to negotiate a sale must procure a customer ready and willing to buy on the terms specified by the principal to the broker, or upon different terms where the principal himself has made the change, or has assented to or ratified any other terms the broker may have made." 4 Am. & Eng. Ency. Law (2d ed.), 974.

It is said that the reason Mr. Steel did not accept the offer made by Mr. Stanley was that he wanted the purchaser to secure the balance due him by mortgage upon property other than that covered by the contract, and that he refused only on that ground. We find the testimony insufficient to sustain this contention. It is true that some demand was made for other security, but it all occurred in the negotiations predicated upon an offer that did not comply with the listing contract. Negotiations of the parties pending a sale as to

details or as to additional security, cannot be held to be an abandonment of the contract, although they may if acted upon become evidences of a modification. If not acted or agreed upon, all differences and disputes must be resolved by reference to the original agreement. Respondent has not performed within the terms of the contract, nor did the parties agree upon another.

Reversed and remanded, with instructions to enter a judgment of dismissal.

CROW, GOSE, PARKER, and MORRIS, JJ., concur.