## JOHN J. CADIGAN *vs.* LOTTA M. CRABTREE.

Suffolk.　March 16, 19, 1906. — June 19, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Agency*, Commission. *Broker. Practice, Civil*, Verdict, Concessions in argument before full court. *Evidence*, Admissions.

In an action by a real estate broker for a commission for procuring a tenant for a certain building of the defendant, the plaintiff testified that he received an offer to take a lease of the property on certain terms and went to see the defendant and reported the terms to her, that she said she would not do anything about it just then, that she was going away, but that she should like to sell the property for a price which she named, and said " You see if you can get me a customer," whereupon the plaintiff said " If you change your mind about renting it, let me know." The defendant denied that any offer to take a lease was communicated to her, and testified that she wrote to her agent to " take the sign down," as she had made up her mind to sell the property, and told the plaintiff at once that she would do nothing with her property, and that she was disgusted with the whole business and was tired out and was going off to rest in New York. Later the defendant leased the property to the tenant from whom the plaintiff testified that he procured the offer on terms which the plaintiff contended were in substance those procured by him. The presiding justice refused to instruct the jury that the plaintiff's authority to procure a tenant for the defendant's property was terminated or revoked at this interview between the plaintiff and the defendant before the lease was made. *Held*, that, apart from the question whether the revocation of authority was in good faith, the instruction that there was a revocation in fact should have been given.

The effect of a verdict for a defendant on a special count, ordered by the presiding justice at a previous trial, on the right of the plaintiff at a new trial to go to the jury on a count on an account annexed involving directly or indirectly the same issues was here referred to by LORING, J. although not passed upon by the court.

Discussion by LORING, J. of the question at what point negotiations conducted by a real estate broker employed by a landowner have progressed so far that a revocation of the broker's authority would be in fraud of his rights.

A concession made by a counsel in his client's presence in conducting an argument before the full court in answer to a question of one of the justices as to his contention is regarded as made for the purposes of that hearing and cannot be introduced in evidence at a new trial of the case as an admission in behalf of his client.

CONTRACT to recover a commission for services as a real estate broker. Writ in the Supreme Judicial Court dated July 29, 1899.

At the first trial of the case before *Morton,* J., the declaration as amended contained six counts. The first and second counts were stricken out with the consent of the plaintiff's counsel. The justice ordered a verdict for the defendant on the fifth and sixth counts, and submitted the case to the jury on the third and fourth counts, but gave instructions which were in effect a ruling that the plaintiff had not made out the case set forth in his third count. The third count was to recover a commission of $2,750 for procuring a tenant for the Hotel Reynolds in Boston belonging to the defendant at an agreed rental, the defendant having refused to carry out her agreement. The fourth count was upon an account annexed for the same amount of money as a commission on a lease of the property with interest from January 1, 1898. The jury returned a verdict for the plaintiff in the sum of $2,847.38. Exceptions alleged by the defendant were sustained by this court in a decision reported in 179 Mass. 474.

There was a second trial before *Loring,* J. The jury, by direction of the justice, returned a verdict for the defendant on the third count, and on the fourth count returned a verdict for the plaintiff, in the sum of $3,257.37. Exceptions alleged by the defendant were sustained by this court in a decision reported in 186 Mass. 7, on the ground that upon all the evidence, as presented at that trial, the jury were not warranted in returning a verdict for the plaintiff on the fourth count.

There was a third trial before *Knowlton,* C. J. Before this trial the plaintiff amended his declaration by adding a seventh count, which was on an account annexed for $2,750, and was exactly like the fourth count as it then stood, except that interest was claimed from March 16, 1899, instead of from January 1, 1898. The case was submitted to the jury on this count, and the jury disagreed.

There was a fourth trial before *Barker,* J. At this trial the plaintiff amended the fourth count of the declaration by striking out the account annexed to that count, and inserting in place thereof the following:

"Boston, July 29, 1899.
" Lotta M. Crabtree,
"To John J. Cadigan, Dr.

" (1)  To commission upon procuring a person or
persons ready to take a lease of the Hotel
Reynolds property as requested by defend-
ant, 1 % of total rental $295,000.  (This
includes total rental to end of renewal
term.)  .    .    .    .    .    .    . $2,950 00

" (2)  Interest on $2950.00 from Jan. 2, 1899, to
July 29, 1899    .    .    .    .    . 102 25

$3,052 25 "

At the close of the evidence the justice directed the jury to
return a verdict for the defendant on the fourth count as
amended.

Before the submission of the case to the jury upon the seventh
count, and with the understanding that the case, if submitted,
was to be submitted to the jury upon that count, the defendant
asked the justice to make certain rulings as follows:

" Seventh.  The plaintiff cannot recover in this action except
upon the ground that he was the procuring or predominating
efficient cause of the lease given by the defendant to Gould and
Pollo; that he was the active and efficient cause of securing
the letting of the Hotel Reynolds to Gould and Pollo, that his
work was the efficient cause of the making of the Gould and
Pollo lease."

The justice gave this ruling.

" Eighth.  Upon all the evidence, the jury would not be war-
ranted in returning a verdict for the plaintiff upon the ground
that he was the predominating efficient cause of the lease given
by the defendant to Gould and Pollo and that his services
brought about the making of that lease."

The justice refused to give this ruling.

" Ninth.  The terms of the Mann lease, so called, are not
substantially the same as the terms of the lease given by the
defendant to Gould and Pollo."

The justice gave this ruling, and subsequently instructed the

jury as follows : " I will say, Mr. Foreman and gentlemen, in reference to what has been called the Mann lease, and the Gould and Pollo lease, as to the similarity of their terms, that they are not substantially the same. The terms of the Mann lease are not, for the purposes of this case, substantially the same as the terms of the lease with Gould and Pollo. I do not consider that it is of crucial importance in this case, because I have said to you that the principal question is, take the Gould and Pollo lease as it was made, has the plaintiff satisfied you by a fair preponderance of the evidence that he was the efficient, predominating cause of the making of that lease as it is."

" Eleventh. Upon all the evidence, the jury would not be warranted in returning a verdict for the plaintiff upon any ground whatsoever, and, as matter of law, and upon all the evidence, the jury is bound to return a verdict for the defendant."

The justice refused to give this ruling.

The defendant asked the justice to order a verdict for the defendant upon the seventh count of the declaration. The justice refused to do this.

Before the charge to the jury, the defendant presented the following requests for instructions, all of which the justice refused to give :

" 8. Upon the evidence, you would not be warranted in finding that the employment or authority of the plaintiff to attempt to procure a tenant for the defendant's property was not terminated or revoked by the defendant, on or about January 2, 1899, by what took place at the Adams House interview, between the plaintiff and the defendant.

" 9. Upon the evidence, the plaintiff's employment or authority to attempt to procure a tenant for the defendant's property was terminated or revoked by what took place at the Adams House interview, between the plaintiff and the defendant, on or about January 2, 1899.

" 10. Upon all the evidence, you would not be warranted in finding that the employment or authority of the plaintiff to attempt to procure a tenant for the defendant's property was not terminated or revoked by the defendant on or about January 2, 1899, or at some time before she finally determined to let the property to Gould and Pollo, and that she was not at the

time acting in good faith; therefore you must return a verdict for the defendant."

" 13. Upon the evidence, you would not be warranted in finding that the defendant was acting in bad faith at her interview with him at the Adams House on or about January 2, 1899, or whenever she terminated or revoked his employment or authority to attempt to procure a tenant for her property.

" 14. There is no evidence to warrant a finding that the defendant was acting in bad faith at her interview with him at the Adams House on or about January 2, 1899, or whenever she terminated or revoked his employment or authority to attempt to procure a tenant for her property."

" 21. Upon all the evidence in the case, you would not be warranted in finding that the plaintiff was the active, efficient, procuring cause of the Gould and Pollo lease.

" 22. Upon all the evidence in the case, you would not be warranted in returning a verdict for the plaintiff.

" 23. Upon all the evidence in the case, the plaintiff cannot maintain this action, and your verdict must be for the defendant."

The substance of the Adams House interview above referred to is described in the opinion.

The case was submitted to the jury upon the seventh count, under which the plaintiff contended that he was entitled to a commission upon the lease which actually was given by the defendant to Gould and Pollo.

A portion of the charge of the justice upon the question whether the plaintiff had been discharged by the defendant in good faith before the lease to Gould and Pollo was made is quoted in the opinion.

The jury returned a verdict for the defendant upon the amended fourth count of the declaration in accordance with the instruction of the justice, and returned a verdict for the plaintiff upon the seventh count in the sum of $3,763.37. The defendant alleged exceptions, which after the death of *Barker*, J. were allowed under R. L. c. 173, § 108, by *Braley*, J.

*F. Paul*, for the defendant.

*T. W. Proctor & W. R. Sears*, for the plaintiff.

LORING, J. We are of opinion that the exceptions to the

refusal to give rulings asked for by the defendant and marked 8 and 9 must be sustained.

The testimony of the plaintiff and the defendant as to what took place at the interview between them on or about January 2, 1899, was conflicting. But whichever of the two stories was believed, the plaintiff's authority to get a tenant for the property was revoked in fact at that time (if it had not been revoked before by the defendant's instructions as to the taking down of the plaintiff's sign), and the jury should have been so instructed.

The plaintiff's story is that on or about December 24, 1898, Gould and Pollo made a definite offer to take a lease on the terms of the Mann lease, which he, the plaintiff, reported to the defendant's agent Gilman ; that Gilman said he could get no answer from the defendant and added: "She is at the Adams House, why don't you go up to see her?" that he did go up on January 2, and that at that interview the defendant said " she would not do anything about it just then ; that she was going away, but that she would like to sell the property, and would sell it for $1,100,000, ' And you see if you can get me a customer.' I said, ' If you change your mind about renting it, let me know ' ; she said she would."

The defendant denied that any such offer from Gould and Pollo was ever communicated to her, and testified that on December 29 she wrote to Gilman to " take the sign down," as she had made up her mind to sell the property if it took a year or even more than a year to do it; and that on January 2, she saw the plaintiff near the elevator and " told him at once I would do nothing whatever with my property ; that my mother and myself were disgusted with the whole business; that we were tired out and were going off to rest in New York."

The refusal to give these rulings cannot be supported on the ground that a revocation of authority in fraud of the plaintiff's rights is not in law a revocation.

This is not the accurate meaning of these two requests for rulings, and it is plain that they were not understood at the trial to have that meaning.

It is plain that the defendant did not so understand them. The only difference between the requests marked 8 and 9 on the

one hand and the request marked 10 on the other hand is that in the request marked 10 the defendant asked for a ruling in case the defendant was not acting in good faith when she revoked the plaintiff's authority.

The presiding justice evidently did not so understand these requests. He told the jury that they could find for the plaintiff if they found that the plaintiff had not in fact been discharged, or if they found that he had been discharged in fact, but that that discharge was made in bad faith. His exact words were: " The plaintiff says in the first place that he was the efficient, predominating cause of the making of that lease. He also says that he was in the employment of the defendant as broker up to the time when that lease was made. He further says that if you find that he had been discharged from his employment as broker by her before that lease was made, that the discharge was made in bad faith, and that he has a right, although so discharged, — a right to be in a position of being employed by her up to that time. You can take up those questions in any order you see fit."

And finally, it is manifest that the plaintiff's counsel did not so understand them, at least when they made their brief in the case now before us. On the first page of their brief the plaintiff's counsel say : " The plaintiff contended that he was the efficient, predominating cause of the lease, that either the defendant had not terminated his employment before the agreement for the lease was really made or if the plaintiff's employment had before then been terminated by the defendant, such termination was by the bad faith of the defendant."

Under the instructions given to them, the jury may have found for the plaintiff on the ground that, independently of the question of bad faith, the plaintiff's authority to get a tenant for the hotel was not revoked before the lease made to Gould and Pollo in March, 1899.

As the exceptions to the refusal to give the rulings marked 8 and 9 asked for by the defendant must be sustained, it is not necessary to consider a question which arises in connection with the exceptions to the refusal to the rulings marked Eleventh, 13, 14, 22 and 23. The question is whether (so long as the verdicts stand which were ordered for the defendant on the third count at the second trial and on the fourth count at the fourth

trial) the following issue of fact (so far as this case is concerned) is not concluded against the plaintiff, namely: "That Gould and Pollo did not offer before January 2, 1899, to take a lease on the terms stated in the lease to Mann." It is manifest that the question whether the revocation of the plaintiff's authority on January 2, 1899, was made in bad faith depends upon how far negotiations by the plaintiff on behalf of the defendant had then progressed, if such negotiations with them had then been carried on by the defendant's request (express or implied) after the Mann lease fell through.

Neither is it essential to consider whether it was necessary for the plaintiff to show that he was the efficient cause of the lease to Gould and Pollo made in March, in addition to showing that the plaintiff's negotiations with them had progressed so far on the date when the defendant revoked the plaintiff's authority as to make that revocation a fraud on the plaintiff. It perhaps might be assumed that a broker's authority is revoked in bad faith where negotiations had been carried on by a broker for his principal and had progressed so far at the time when the broker's authority was revoked that he was found to be the efficient cause in fact of a trade subsequently struck between the principal and the customer. In such a case it would seem that the finding that the broker was the efficient cause of the trade made includes a finding that the revocation was in fraud of his rights. But it does not follow that a revocation of authority may not be in fraud of the broker's rights when it could not be found that his acts before the revocation were the efficient cause of the subsequent trade. It seems to have been assumed at the trial that the plaintiff had to make out in proof two propositions, first, that he was the efficient cause of the contract subsequently made, and second, that the revocation of his authority was in fraud of the broker's rights. But, as we have said, it is not necessary to consider those questions now.

The question of efficient cause is ordinarily at least a question of fact for the jury where no exclusive agency has been given and where two brokers have worked on the case, as in *Crowninshield* v. *Foster*, 169 Mass. 237. It is in that class of cases that ordinarily at least the substantial identity of the offer not accepted and the trade made is material.

There is one question of evidence which may arise again. The defendant's counsel asked the plaintiff on cross-examination whether at the argument before the full court in *Cadigan* v. *Crabtree*, 186 Mass. 7, the Chief Justice did not ask the plaintiff's counsel in his (the plaintiff's) presence, "if he contended that Miss Crabtree was acting in bad faith when she said what she testified to in January, 1899." This was excluded on the ground that the question asked by the Chief Justice was asked as to the contention of the plaintiff's counsel for the purpose of that hearing, and that if the plaintiff's counsel answered that question in the negative it did not preclude the plaintiff from contending at the trial in question that there was in fact bad faith on the defendant's part in revoking the plaintiff's authority. We are of opinion that the ruling was correct.

*Exceptions sustained.*