[No. 10281.  Department One.  December 27, 1912.]

WILL H. MERRITT et al., Respondents, v. AMERICAN
CATERING COMPANY, Appellant.[1]

FRAUDS, STATUTE OF—EMPLOYMENT OF BROKER—SALE OF PERSON-
ALTY—TRADE FOR LAND.  A contract to pay a commission on the sale
of a cafe, being for the sale of personal property, is not within the
statute of frauds (Rem. & Bal. Code, § 5289), requiring an agreement
employing an agent to sell or purchase real estate to be in writing,
notwithstanding that the owner agreed to take part or all of his
price in land, and the agent effected a trade of the cafe for land,
which was consummated.

BROKERS—CONTRACT FOR COMMISSIONS—PERFORMANCE.  Brokers
who procured a purchaser to whom a sale was made through contin-
uous negotiations covering 12 days, cannot be deprived of their com-
missions by an attempted discharge because of their inability to
secure a loan by which the deal was to be consummated, where the
owner himself procured the loan and consummated the deal, on
terms somewhat different from those originally contemplated.

Appeal from a judgment of the superior court for King
county, Yakey, J., entered December 9, 1911, upon findings
in favor of the plaintiffs, in an action on contract, after a
trial to the court.  Affirmed.

Farrell, Kane & Stratton, for appellant.

John E. Humphries and William A. Johnson, for respond-
ents.

PARKER, J.—This is an action to recover compensation
claimed by the plaintiffs to be due them as commission upon a
sale of the defendant's cafe, for which they found and pro-
duced a purchaser, in pursuance of an agency contract ex-
isting between them and the defendant.  The cause was tried
by the court without a jury, resulting in findings and judg-
ment in favor of the plaintiffs, from which the defendant has
appealed.

In December, 1910, and for some time prior thereto, re-
spondents were engaged in selling property, both real and

[1]Reported in 128 Pac. 1074.

personal, for others upon commission, doing business under the firm name of "Merritt Realty Company." In November, 1910, appellant entered into an oral contract with respondents, as its agents, to sell its cafe, situated in the city of Seattle, for the sum of $30,000, agreeing to pay respondents therefor a commission of $1,000. Thereafter, about December 1, 1910, respondents found and produced a purchaser who was ready, able, and willing to purchase the cafe at the price of $30,000, and upon terms acceptable to appellant. Thereafter on December 12, 1910, a sale of the cafe was made by appellant to the purchaser so produced by respondents, at an agreed price of $30,000, and as payment therefor appellant accepted from the purchaser real and personal property of the agreed value of $30,000. This is the substance of the findings made by the trial court, from which it concluded that respondents were entitled to judgment against appellant for $1,000, and judgment was so rendered accordingly.

Counsel for appellant first contend that the trial court erred in finding that the contract was not one authorizing respondents to find a purchaser for its cafe, but that it was one authorizing respondents to find for it wheat land in British Columbia or Washington, with a view to paying for such land by exchanging the cafe therefor; and they argue that respondents cannot recover any commission because the contract was not in writing, as required by Rem. & Bal. Code, § 5289, providing that an agreement authorizing or employing an agent to sell or purchase real estate for compensation must be in writing. It appears from the testimony that, when the agency contract was made, appellant fixed the price of its cafe at $30,000, and informed respondents that it would exchange the cafe for land of equal value, and would, if necessary, pay $10,000 or $15,000 in addition, if a tract of land acceptable to it of that additional value should be offered in exchange. It is also a fair inference from the testimony that appellant would accept $30,000 in cash for the cafe, though

apparently little thought was given to the possibility of a cash sale of the cafe. The testimony is practically without conflict on these questions, and we think this is a fair summary of the facts appearing therefrom. Appellant concedes that in law the deal contemplated in the beginning, and also as finally consummated, was a sale of the respective properties, though each was simply exchanged for the other. The fact that the properties were each taken in exchange at a fixed money value makes the transfer of each a sale in law. Tiedeman, Sales, § 12; *Picard v. McCormick*, 11 Mich. 68; *Thornton v. Moody* (Tex. Civ. App.), 24 S. W. 331. We are of the opinion that the trial court was not in error in finding that respondents were authorized to find a purchaser for appellant's cafe, though it was expected that the purchase price would be paid in property instead of money; and the cafe being personal property, the agency contract was not within our statute of frauds.

It is next contended that the trial court erred in finding that respondents found and produced a purchaser who was ready and willing to purchase the cafe, and who did purchase it as the result of respondents' efforts. This also presents a question resting upon testimony in which there is practically no conflict. About December 1, respondents found and produced a Mr. Corkery, who owned a ranch of about 15,000 acres lying partly in Umatilla county, Oregon, and partly in Walla Walla county, Washington, which he valued at $30,000, and which he was willing to exchange at that price for property of equal value in Seattle. The parties were brought together by respondents, and each inspected the property of the other about the 1st or 2nd of December, and very soon thereafter arrived at a tentative agreement for the exchange of their respective properties, each at an agreed value of $30,000. Mr. Corkery then informed appellant and respondents that it was necessary that he raise about $5,000, in order to pay off his debts in Eastern Washington before leaving there and coming to Seattle, and gave them to under-

stand that he could not make the exchange unless he could procure a loan of about that amount. Respondents then made some effort to procure a loan for Mr. Corkery, but did not succeed in doing so. However, appellant did procure a loan for Mr. Corkery of $3,300, and the exchange was immediately thereafter consummated on December 12. When it became apparent that respondents were probably not going to be able to procure a loan for Mr. Corkery, appellant, very shortly prior to December 12, informed respondents that, if they did not immediately procure a loan for Mr. Corkery, they would be considered out of the deal, evidently meaning that they would not be paid any commission for their services in producing Mr. Corkery as a prospective purchaser of the cafe. It is evident that the exchange as finally made was the result of negotiations which had been continuous from the time respondents produced Mr. Corkery as a prospective purchaser up until the final consummation of the exchange. It seems to us that, in view of the fact that Mr. Corkery was found and produced by respondents, that the exchange was actually made between appellant and Mr. Corkery, and that it was the result of continuous negotiations from the time the parties were brought together by respondents until the final exchange on December 12, covering a period of only 12 days, appellant cannot be heard to say that respondents did not perform their contract, nor that their rights were terminated by the attempted discharge on the part of appellant before the exchange was finally consummated. In the early case of *Knox v. Parker*, 2 Wash. 34, 25 Pac. 909, Justice Stiles, speaking for the court, said:

"If, at the time of the revocation, the agent should have a pending treaty with a proposing purchaser, who afterwards, by a continuance of the same negotiations with the principal himself, actually buys the property, the agent would have fully earned his commission, since the principal in such a transaction cannot arbitrarily cut off the agent's authority, in the midst of what would be a successful agency, and then,

although himself taking advantage of the agent's services, refuse him compensation."

Nor does the fact that the sale may have been consummated upon negotiations directly between appellant and Mr. Corkery, upon somewhat different terms from those originally contemplated, affect the right of respondents to commission, in view of the facts we have noted. *Barnes v. German Sav. & Loan Soc.*, 21 Wash. 448, 58 Pac. 569; *Norris v. Byrne*, 38 Wash. 592, 80 Pac. 808; *Elmendorf v. Steel*, 70 Wash. 38, 126 Pac. 52; 19 Cyc. 249.

Counsel for appellant rely upon our decision in *Frink v. Gilbert*, 53 Wash. 392, 101 Pac. 1088. That case, however, we think is distinguishable from this, in that there the original negotiations initiated upon the production of the prospective purchaser by the agent entirely ceased and were abandoned, and soon thereafter independent negotiations were instituted between the same prospective purchaser and the seller at the instance of another agent. Plainly the production of the prospective purchaser by the first agent was not the procuring cause of the sale, and he therefore could not recover commission therefor.

We conclude that the learned trial court properly disposed of the rights of the parties, and that its judgment should be affirmed. It is so ordered.

MOUNT, C. J., CHADWICK, and CROW, JJ., concur.