[No. 16115.  Department Two.  April 4, 1921.]

FRED B. GRINNELL COMPANY et al., *Respondents*, v. E. H. STANTON, *Appellant*.[1]

BROKERS (13)—CONTRACT FOR COMMISSIONS—PERFORMANCE.  The fact that, after a broker had produced a customer ready to buy and introduced him to the seller, the negotiations were conducted between the principals and the transaction consummated upon different terms than originally contemplated would not defeat the right of the broker to a commission.

COMPROMISE AND SETTLEMENT—IMPEACHMENT—FRAUD.  A settlement and receipt in full by a broker for his commissions, induced by misrepresentations as to the price for stock paid by . a customer procured by the broker, cannot be interposed to defeat the broker's action for recovery of a balance of commission due on the price actually received.

Appeal from a judgment of the superior court for Spokane county, Hurn, J., entered March 12, 1920, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Affirmed.

*Danson, Williams & Danson* (*R. E. Lowe*, of counsel), for appellant.

*Graves, Kizer & Graves*, for respondents.

MAIN, J.—This action was brought to recover the balance of a commission alleged to be due the plaintiff

[1]Reported in 197 Pac. 28. .

the Fred B. Grinnell Company, as a broker, upon the sale of certain corporate stock. In the answer, the defendant denied liability and plead affirmatively a settlement. In reply to the affirmative defense, the plaintiffs alleged that the settlement was induced by false and fraudulent representations. Upon the issues thus framed, the cause came on for trial and resulted in findings of fact, conclusions of law and a judgment sustaining the right of the plaintiffs to recover. From the judgment thus entered, the defendant appeals. The facts may be stated as follows:

The respondent, Fred B. Grinnell Company, is a corporation organized and existing under the laws of the state of Washington, and is engaged in the brokerage business in the city of Spokane. The E. H. Stanton Company was a corporation engaged in conducting a packing house business at Spokane. The appellant, E. H. Stanton, was the president and sole manager of the E. H. Stanton Company. In the spring of 1917, the Fred B. Grinnell Company caused a representative of that company to inquire of Armour & Company, engaged in the packing business at Chicago and other points, whether that company would be interested in acquiring the E. H. Stanton Company plants and received a reply that the Armour Company was interested. Soon after this and on May 8, 1917, the following writing was made and delivered to the Grinnell Company:

"Spokane, Wash., May 8th, 1917.
"Fred B. Grinnell, Esq., Spokane, Washington.

"Dear Sir: Regarding situation of which we have been talking today beg to say the situation is about as follows:

"The capital stock is $600,000 being 6,000 shares par value $100 per share, plant $300,000 (cash $600,000). Stock on hand $800,000; book accounts $300,000. Total

assets $1,400,000. Liabilities $285,000. I own or control 5084 1/3 shares of the capital stock and hereby give you an option and agree to deliver the same to you at any time on or before fifteen days from today upon the payment to me in cash of $220 per share. Also understood will give you whatever means that are necessary within this time for investigation of entire situation. I further agree to pay you (2) two per cent commission for selling stock of E. H. Stanton Co.

"E. H. Stanton.

"Witness:
   "Robert W. Grinnell."

While this letter is addressed to F. B. Grinnell, its purpose was to secure the services of the Grinnell company as a broker. No further reference will be made to F. B. Grinnell as a party to the action, but the party plaintiff and respondent will be referred to as the F. B. Grinnell Company. The letter sent out is in the form of an option and concludes with an agreement to pay two per cent commission for selling the stock of the E. H. Stanton Company. The option feature was to continue for a period of fifteen days. Within a very few days after this letter was signed, the respondent caused representatives of the Armour Company to come to Spokane for the purpose of looking over the E. H. Stanton plant. When they arrived they were met at the train by representatives of the Grinnell Company, the transaction was talked over with them and they then were taken to the packing plant and introduced to the appellant, E. H. Stanton.

From this point on Stanton conducted negotiations, having suggested to the representative of the Grinnell Company that that was the better procedure to follow. The negotiations lasted for some days, and within the limit of time specified in the contract, Armour & Company purchased of the stock of E. H. Stanton & Com-

pany a total of 4613 1/3 shares. Of this stock so purchased, Stanton and family owned 2,420 2/3 shares, Hamilton 1,096 1/3 shares, Hample 1,096 1/3 shares, and Mrs. Armstrong, or the Armstrong estate, 33 shares. Hamilton and Hample received for their stock from Armour & Company $200 per share. Stanton received for the stock owned by himself and family $220 per share and $20 per share upon the stock of each Hamilton and Hample. Some days after the sale of this stock was consummated, a representative of the respondent company took up with the appellant the matter of the commission. At this time the appellant represented that he had sold his stock for $200 per share and that Hamilton and Hample had refused to bear any part of the commission. Relying upon these representations, the respondent was induced to accept as a commission the sum of $12,500. Subsequently that company learned that Armour & Company had paid $220 per share for the stock which it had received, and brought this action to recover the balance of the commission alleged to be due it based upon that purchase price.

In the appellant's brief, the first question is stated to be, in what amount, if at all, was the appellant indebted to the respondent on account of the purchase of the stock by Armour & Company? The answer to this question depends upon two things: The appellant claims that he received only $200 per share for his stock and that the extra $20 per share upon his own, as well as upon the stock of Hamilton and Hample, was to compensate him for an agreement with Armour & Company when the transaction was closed, to the effect that for a period of ten years he would not engage in the meat business in the states of Washington, Ore-

gon, Idaho and Montana, for his guarantee of the book accounts of the Stanton Company, and, for a further agreement, to give such portion of his time as Armour & Company should require for one year in the management of the business. The other consideration, which is vital in determining the answer to the question, is whether the sale of the Hamilton and Hample stock was conducted by the appellant or by themselves, the appellant's position being that they made their own sale. Upon the question as to whether the extra $20 per share was made for the purpose claimed by the appellant, the court found that Armour & Company was ready, able and willing to purchase the stock of the Stanton Company for the sum of $220 per share and that it did purchase the stock, including that of Hamilton and Hample, for that price. The trial court found

"that the sum in excess of $200 a share which was paid to the defendant Stanton and his family for the stock in the E. H. Stanton Company owned by them was not paid in consideration of the agreement of the defendant Stanton not to engage in the meat-packing business in Montana, Oregon, Idaho or Washington for a period of ten years from the date of the sale, the guarantee of accounts receivable of E. H. Stanton Company by the defendant Stanton, and the agreement of the defendant Stanton to hold himself in readiness to assist Armour & Company in the management of the business for some time after the sale if Armour & Company should request him to do so. I find that these collateral agreements of the defendant were merely details in the terms of the sale which were agreed upon between the defendant and Armour & Company and that defendant was ready and willing to agree to such terms in order to induce Armour & Company to purchase the stock at $220 a share and that no independent consideration was paid by Armour & Company for these collateral agreements on defendant's part, but that the sum which he received in excess

of $200 a share for the stock owned by himself and his family represented $20 a share upon the stock of Hamilton and Hample which defendant procured from Armour & Company by misrepresentation of conditions to Hamilton and Hample.''

Upon the question as to whether the defendant sold the stock of Hamilton and Hample or whether the owners thereof effected the sale, the court found that the appellant not only sold the stock of himself and family but sold Hamilton and Hample and the Armstrong's stock, making a total, as above stated, of 4,646 1/3 shares.

Upon this appeal there are no serious questions of law, the vital questions being those of fact. The testimony of the appellant supports his theory of the defense. The facts and circumstances shown by other evidence in the case are potent in establishing that the findings of the trial court are sustained by the great weight of the testimony. Indeed, it is difficult to say, after giving careful consideration to all the evidence, how a different conclusion could have been arrived at.

There is some mention of the terms of the sale not being as those set out in the letter option. It is true, the company contemplated a sale for cash, and the sale as consummated was for part cash and part notes of the Armour Company. The fact that, after representatives of the Armour Company had been introduced to the appellant, he conducted the negotiations with them and consummated the transaction upon different terms than those originally contemplated does not affect the right of the respondents to a commission. *Peterson v. St. Francis Hotel Co.*, 61 Wash. 378, 112 Pac. 347; *Merritt v. American Catering Co.*, 71 Wash. 425, 128 Pac. 1074.

The second question stated in the appellant's brief as being involved in this appeal is, were any misrepresentations made by the appellant which would justify the cancellation of the settlement made? If the appellant represented to the respondent that the sale of the stock was for $200 per share, when in fact it was $220 per share, and that Hamilton and Hample refused to pay any part of the commission, and these representations were untrue, it would necessarily follow that the settlement was induced by fraudulent representations. Upon this question the court found:

"The settlement made by the defendant Stanton with plaintiff, and the receipt in full for its claim given by plaintiff to defendant upon payment of $12,500 was induced by the misrepresentation of defendant that he had been unable to obtain more than $200 a share for his stock and that his associates had refused to pay any part of plaintiff's commission. Plaintiff accepted the sum of $12,500 in settlement of its claim for commission and gave the receipt in question in reliance upon defendant's representations as aforesaid and believing them to be true, and it would not have made such settlement and given such receipt had it known the true condition relating to the sale of the stock."

The judgment of the trial court was clearly right and it will be affirmed.

HOLCOMB, TOLMAN, MITCHELL, and MOUNT, JJ., concur.