[No. 25549. Department Two. September 3, 1935.]

S. E. HEGE *et al., Respondents,* v. CECILIA VOELKER, *Appellant.*[1]

*Brown & Weller,* for appellant.

*E. A. Cornelius* and *Joseph McCarthy,* for respondent.

BLAKE, J.—Plaintiffs, real estate brokers, brought this action for a commission on account of the sale of a ranch owned by defendant and sold by her to one Bucholz. The only question in issue is whether plaintiffs were the procuring cause of the sale. The court found ultimate facts from which it made a finding and conclusion that they were. From judgment thereon in favor of plaintiffs, defendant appeals.

What we regard as the essential facts are not in dispute. Appellant was the owner of a three hundred seventy acre ranch in the southeastern part of Spokane county. Respondents had had an exclusive listing on it for some time prior to April, 1934. At that

[1]Reported in 48 P. (2d) 579.

time, the exclusive feature of the listing was withdrawn and appellant listed the property with other brokers, among them one George Burns. After that, respondents ran several advertisements about the ranch in the Spokesman-Review—one such in the issue of August 12.

On August 16, Bucholz came into respondents' office with a clipping of this advertisement. He talked to Mr. Hege about the place. The latter, however, not being familiar with the ranch, asked him to return the next day and talk with Mr. Tipton, who had charge of farm listings. The next day, August 17, Bucholz returned. Tipton described the ranch in detail, advising him that the price asked was fifty dollars an acre, with a down payment of nine thousand dollars. He made a diagram of the place, which he gave to Bucholz. He also pointed out the location of the property from a plat book. The down payment was designed to liquidate a mortgage of $6,250, and leave appellant $2,750 in cash. In connection with the down payment, Tipton told Bucholz that appellant might be induced to change the terms. He also told him that he thought the down payment might be financed through the Federal Land Bank; that he (Tipton) was certain the Federal Land Bank would loan from thirty-five to forty dollars an acre on the property.

Tipton then offered to drive Bucholz down to look the ranch over. Bucholz declined, saying that he was going to visit relatives who lived in that part of the county, and that, while there, he would go and see the property; that, after seeing it, he would return to respondents' office the first of the following week. This was in the morning of Friday, August 17. Immediately after Bucholz left the office, Tipton wrote appellant, advising her that Bucholz was interested in her place and that "he (Bucholz) would get down

today or tomorrow and would see your place.'' He added: ''I thought best to drop you a line, so that you will know that I am still trying and hope to have some definite proposition for you before long.''

That afternoon, Bucholz went down to Fairfield and called upon one Moss, a banker and real estate broker. Moss did not have a listing of the Voelker ranch, but he had a working arrangement with Burns. He called Burns and ascertained the terms of the listing. The next morning, Moss took Bucholz to look at a ranch near Spangle. Bucholz not being interested in that, Moss took him to the Voelker place. They went over it. During the next two days, Bucholz, with various relatives, visited the place on three different occasions.

Tuesday morning, August 22, Moss and Bucholz went to Spokane, where they were joined by Burns. The three called on appellant, who then lived at Opportunity. They made her a proposition and then left to give her time to consider it. That afternoon, the deal was closed and a contract was executed, whereby Bucholz agreed to assume the mortgage and pay two thousand five hundred dollars in cash. The purchase price was eighteen thousand five hundred dollars—the same as quoted by Tipton.

During one of these visits, appellant told of having received the letter from Tipton. Moss said he did not hear her. Burns said she told of it after the contract of sale was executed. Bucholz testified that he told appellant that respondents were not entitled to a commission, because they had not ''shown the place'' to him. There is no evidence, however, justifying an inference of collusion on the part of appellant. She simply wanted to sell her property and did not want to render herself liable for more than one commission.

The facts bring the case squarely under the

rule of *Dore v. Jones,* 70 Wash. 157, 126 Pac. 413. In that case, Dore, the broker, sued Jones & Mollendorf, the owners, for a commission. Dore introduced Mollendorf to the prospective purchaser, who was favorably inclined toward the property and promised to look at it that day. In the meantime, another broker, Wilson, showed her the property, brought her in contact with the owners, and effected a contract of sale. On these facts, a jury returned a verdict for the plaintiff. On appeal from judgment on the verdict, this court ordered the cause dismissed, using the following language:

"The plaintiff first introduced the prospective purchaser to defendants, but he did nothing more. It was conclusively shown that Mr. Wilson, of the firm of Grinnell & Company, was the efficient cause of the sale, and there is no claim, or at least no evidence, that the defendants acted in bad faith with the plaintiff. The mere fact that the plaintiff first introduced the purchaser to the defendants is not a compliance with the contract to sell, where it is shown that the sale is made and closed by another agent with whom the property is also listed. In *Frink v. Gilbert,* 53 Wash. 392, 101 Pac. 1088, we said:

" 'Where several brokers have the same property listed for sale, although each has contributed towards the result, the one whose effort was the efficient cause of the sale is entitled to recover the commission. The leading case upon this subject, and one most frequently cited and relied upon by the courts, is that of *Vreeland v. Vetterlein,* 33 N. J. 247, where the court said: "Where the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy, and quits him without having effected a sale, he is aware that he runs the risk of such person falling under the influence of his competitor—and in such case he may lose his labor. This is a part of the inevitable risk of the business he has undertaken. . . . Now in this

competition, the vendor of the property is to remain neutral; he is interested only in the result. But when either of the agents thus employed brings a purchaser to him, and a bargain is struck at the required price, on what ground can he refuse to complete the bargain? Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat with him on the subject? There is no legal principle upon which such a position could rest. . . . And if, therefore, it should be known to the vendor of the property that the agent, who introduces a purchaser to him has, by the usual arts of competition, taken such purchaser out of the hands of his rival, I am not aware of anything in the law which would justify such vendor in a refusal to complete the contract. . . . In the absence of all collusion on the part of the vendor, the agent, through whose instrumentality the sale is carried to completion, is entitled to the commissions." ' "

And this must be the rule, if owners listing their property with more than one broker are to be protected against payment of more than one commission. To sustain this judgment, would permit every broker with whom a property is listed to earmark every customer to whom he talks about the property and claim a commission without performing any real service. He cannot acquire a right to a commission by merely writing the owner that he has a live prospect. If a broker could claim a commission under such circumstances, an owner might very well be subjected to the payment of a commission to every broker who had a listing.

Respondents rely upon the following cases in support of the judgment: *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471; *Barnes v. German Savings & Loan Society,* 21 Wash. 448, 58 Pac. 569; *Elmendorf v. Golden,* 37 Wash. 664, 80 Pac. 264. These cases are so readily distinguishable on the facts that the court

did not even mention them in *Dore v. Jones, supra.* We therefore do not think it necessary to review them now.

The judgment is reversed, and the cause ordered dismissed.

STEINERT and MITCHELL, JJ., concur.

HOLCOMB, J. (concurring)—Although at first inclined to the belief that the facts in this case brought it within the rule of *Elmendorf v. Golden,* 37 Wash. 664, 80 Pac. 264, I am now rather persuaded that the instant case is governed by the *Dore* case quoted. Hence, I concur in the result, but do not concur in the strong statements contained in the paragraph immediately following the quotation from the *Dore* case. I consider them both illogical and unnecessary.