[No. 32573. Department Two. April 30, 1954.]

M. J. FEELEY, *Respondent*, v. CHARLES MULLIKIN *et al.*,
*Appellants.*[1]

[1]Reported in 269 P. (2d) 828.

*Roy E. Jackson* and *Thor P. Ulvestad*, for appellants.

*Jerry T. Haggarty*, for respondent.

HILL, J.—This is an action to recover a commission on the sale of an apartment house lease and the furnishings, fixtures, etc., that went therewith. The findings of fact will be accepted as the established facts of the case, and the question presented is whether, as a legal proposition, those findings support the conclusions of law and the judgment. As found by the trial court, the facts material to the issue of law here presented are as follows:

In October, 1951, M. J. Feeley was orally employed by Charles Mullikin and Jane Doe Mullikin, hereinafter called the Mullikins, to procure a purchaser for their lease of an apartment house, the Stonecliff. They were asking $26,-500, with a cash down payment of $12,000, and Feeley was to receive a commission of ten per cent in the event he secured a purchaser. This contract of employment was still in effect May 1, 1952, when a sale was made through another broker, George Hagglund, to Mr. and Mrs. Bogle Payne, for $27,500 with a down payment of $12,000 cash. Feeley sued for a ten per cent commission, contending that he had procured the Paynes as purchasers and that they had been ready, able, and willing to purchase on the terms fixed by the Mullikins.

Feeley had, with the knowledge and assistance of the Mullikins, shown the Paynes Stonecliff in October, 1951, and they were willing to pay the $26,500 but had only $6,000 cash and wanted the Mullikins to accept the transfer of a business located at 1103 Summit avenue, Seattle, at an

agreed price of $6,000 as the balance of the down payment. This offer was rejected by the Mullikins.

About February 26, 1952, Feeley, having sold the business at 1103 Summit avenue for the Paynes, advised the Mullikins that the Paynes were ready to pay $26,500 for the lease and to make a down payment of $12,000. *At that time the Mullikins advised Feeley that they did not desire to consummate the sale of their lease until after June 1, 1952, and Feeley so informed the Paynes.*

As heretofore stated, the Paynes purchased the lease from the Mullikins about May 1, 1952, for $27,500, with a down payment of $12,000, through another broker. The terms of this transaction were that the Mullikins were to receive a net amount of $25,000 and were to pay Hagglund a commission of $2,500. This sale actually netted the Mullikins $1,150 in excess of the amount they would have received had the sale been made by Feeley on the terms at which the property had been listed with him, *i.e.*, $26,500 less a commission of $2,650.

Hagglund never had the Stonecliff lease listed for sale, nor did he have any agreement with the Mullikins relative to the sale thereof at any time whatsoever, except the specific agreement for the sale to the Paynes. In closing that sale, Hagglund, on behalf of the Paynes, offered the Mullikins a number of real-estate contracts as part of the $12,000 down payment, which offer was refused. Thereafter Hagglund bought the real-estate contracts from the Paynes in order that they might have the $12,000 cash for the down payment.

Feeley never discontinued his efforts to effect the sale of the lease to the Paynes from the time they were first shown the apartment house until the sale referred to had been made. He had no knowledge of the various real-estate contracts held by the Paynes, "nor was he given the opportunity of buying them in order to effect a sale." Finding of fact No. VII.

The Paynes did not make known to Hagglund that they had been shown Stonecliff by Feeley. The Mullikins concealed from Hagglund that the Paynes had been dealing

with them through Feeley and did not advise Feeley that the Paynes were dealing with them through Hagglund.

From these findings of fact, the trial court concluded that Feeley was entitled to recover a ten per cent commission from the Mullikins on their sale to the Paynes, and entered judgment for $2,750 accordingly. From that judgment the Mullikins appeal. (The appeal challenges the right of Feeley to recover, but not the amount of the recovery. As to whether he was entitled to recover more than the commission contemplated by his agreement with the Mullikins, we express no opinion.)

■ When a broker is employed to procure a purchaser on certain terms and he procures a purchaser to whom a sale is eventually made, he is entitled to a commission *irrespective of who makes the sale or the terms thereof, if he was the procuring cause of the sale. Dalke v. Sivyer*, 56 Wash. 462, 105 Pac. 1031 (1909); *Merritt v. American Catering Co.*, 71 Wash. 425, 128 Pac. 1074 (1912), and cases cited therein; *Grinnell Co. v. Stanton*, 115 Wash. 230, 235, 197 Pac. 28 (1921).

The corollary follows that the fact that a broker produces a purchaser to whom the sale is eventually made does not entitle him to a commission *if he was not the procuring cause of the sale.*

Appellants urge that it was the circumstance of Hagglund's purchase of the contracts from the Paynes which made the sale possible, and that without his efforts the sale would not have been effected; hence Feeley could not have been the procuring cause of the sale.

■ We do not believe that Hagglund's purchase of the Paynes' contracts can be said to be the decisive factor in determining whether he or Feeley was the procuring cause of the sale. The trial court made a specific finding that Feeley had no knowledge of the various real-estate contracts held by the Paynes, and that he was not given an opportunity to buy them in order to effect a sale. We think the situation would have been no different had the Paynes secured the necessary cash from a bank loan or from any source other than Hagglund. For a somewhat similar situation involving

the financing requirements of the purchaser, see *Merritt v. American Catering Co., supra.*

Appellants rely upon *Frink v. Gilbert*, 53 Wash. 392, 101 Pac. 1088 (1909), where we affirmed findings and judgment in favor of the defendant in an action for a broker's commission because the plaintiff-appellant had not established that he was the efficient procuring cause of the sale. This was what may be termed a "competing brokers" case; before either broker contacted the ultimate purchaser, the property had been listed with both brokers and that fact was known to them. The competing brokers were Frink *et al.* and a Mrs. Simpson. Although Frink was the first one to show the property in question to Mr. Muehe, the ultimate purchaser, we stated that Mr. Muehe, when contacted by Mrs. Simpson, had given up any thought of buying through the appellants and that Mrs. Simpson

". . . was the first to procure a customer who met all the requirements of readiness, willingness, and ability. This she accomplished through the generosity of Mr. and Mrs. Ford."

(The Fords apparently agreed to guarantee certain payments and eventually made cash available to close the deal.)

To further quote from that opinion:

"Appellants had introduced Muehe as a prospective customer. He was *ready* and *willing*, but he was *not able* to buy on the terms proposed. His attitude toward the deal was such that the court below was warranted in finding that the sale would not have been accomplished by appellants or on the terms proposed by them. Mr. Muehe says, 'Well, the facts were these, that Mr. Ford offered to go my security—made it possible for me to buy the Stetson.'

"Where several brokers have the same property listed for sale, although each has contributed towards the result, the one whose effort was the efficient cause of the sale is entitled to recover the commission." (Italics ours.)

Also, there was no collusion on the part of the vendor.

We clearly indicated the basis for the decision in that case, as follows:

"The cases in this court, of *Von Tobel v. Stetson & Post Mill Co., supra* [32 Wash. 683, 73 Pac. 788 (1903)], and

other cases following it, go no further than to declare the general rule that a principal who has placed property in the hands of an agent cannot thereafter deal with the customer on his own account, or through a broker thereafter employed by him, and defeat the agent's commission. The case here presented falls within a different rule. The property was *listed with two agencies*, and the only question open is which one was the efficient procuring cause of the sale." (Italics ours.)

In the instant situation, the broker who consummated the sale was not employed by the owners to procure a purchaser and did not appear in any manner *until he had secured possession of the first broker's customers*. They were not "competing brokers" and there is nothing in *Frink v. Gilbert, supra*, or the cases following it that would prevent a finding that Feeley was the procuring cause of the sale. See *Elmendorf v. Golden*, 37 Wash. 664, 80 Pac. 264 (1905); *Hege v. Voelker*, 183 Wash. 375, 380, 48 P. (2d) 579 (1935), concurring opinion.

 Had the trial court found as an ultimate fact that Feeley was the procuring cause of the sale, we could affirm the judgment based upon such finding without more ado; but the trial court made no such specific finding, apparently basing its conclusion that the respondent is entitled to a commission upon still another well-recognized rule, *i.e.*, that a principal may *in good faith* revoke a broker's agency if no time has been fixed for its continuance and a purchaser has not yet been procured; however, he is not entitled to revoke the agency or ignore it for the purpose of avoiding payment of a commission or to secure some other benefit to himself, and if he attempts to revoke the agency, or if, without express revocation, he intervenes in the midst of negotiations between a prospective purchaser and the broker by taking the matter into his own hands, and completes the sale himself or through another agent to such purchaser, *such revocation or intervention, if made in bad faith, cannot defeat the right of the broker to a commission. Branch v. Moore*, 84 Ark. 462, 105 S. W. 1178 (1907); *Wolf v. Casamento*, 185 So. (La. App.) 537 (1939); *Grace Realty Co. v. Peytavin Planting Co.*, 156 La. 93, 100 So. 62, 43 A. L. R.

1096 (1924); *Semonian v. Bloomberg*, 253 Mass. 32, 147 N. E. 891 (1925); *Cadigan v. Crabtree*, 192 Mass. 233, 78 N. E. 412 (1906); *Henning v. Holbrook-Blackwelder Real Estate Trust Co.*, 218 Mo. App. 433, 277 S. W. 62 (1925); *Studt v. Leiweke*, 100 S. W. (2d) (Mo. App.) 30 (1937); *Goodman v. Marcol*, 261 N. Y. 188, 184 N. E. 755, 88 A. L. R. 714 (1933); *McGuire v. Sinnett*, 158 Ore. 390, 76 P. (2d) 472 (1938); *McCarthy v. McCarthy*, 49 R. I. 200, 142 Atl. 142 (1928).

In *Henning v. Holbrook-Blackwelder Real Estate Trust Co., supra,* the owner had refused to sell certain lots to the prospect produced by Henning, a broker employed by the owner (as the Mullikins had refused to sell to the Paynes in February, 1952), and six months later did sell to the same prospect through another broker. The verdict of a jury awarding Henning his commission on the sale was affirmed, the court saying:

"If, however, the principal forestalls the agent in his efforts to consummate the sale, by refusing to sell to the prospective purchaser discovered by the agent, and afterwards opens negotiations with such prospective purchaser and sells the property to him, as in this case, the agent is entitled to his commission the same as though he had been permitted to follow up the deal to its final consummation, and in such case it is a matter of no concern whether the principal finally consummates the sale himself or does it through other agents. If this were not so, it would become an easy matter for the principal to escape the payment of the agent's commission, while enjoying the fruits of his labors."

Most of the cases in which bad faith of the owner seems to be the most important element involve appeals from findings of fact (by the trial court or the jury) that the broker was the procuring cause of the sale. However, it is implicit in the holdings, and the language therein contained, that when the owner in bad faith deprives the broker of the opportunity of consummating the sale to a purchaser whom he has produced and with whom he is negotiating, the broker may be considered as the proximate and procuring cause of the sale as a matter of law. As stated in *Grace Realty Co. v. Peytavin Planting Co., supra:*

"The decisions above quoted, when considered as a whole, are based, *not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit.*" (Italics ours.)

In the same case it is said:

"It is true that a principal may reserve his right to sell his property at a fixed net price, and may deny to a broker the exclusive right of sale. The principal, in such event, may sell his property either directly or through any agent to a third person; but he cannot, in any case, dispose of the property to a prospective purchaser introduced by an agent and deprive the agent of his commission, either by discharging him shortly before or after the sale, or *by silently ignoring his rights in the premises.*

"The principal, in order to relieve himself of liability in such a contingency, must either notify the agent of the offer and give him a reasonable time to protect his commission, or he must decline the sale. Good faith and fair methods of trade require such a course of conduct, and nothing short of this will shield a principal against the payment of the commissions of the agent, unless there is a bona fide discharge of the agent, or such length of time has elapsed as to show that the effort of the agent was not a contributing cause of the sale." (Italics ours.)

That the Mullikins intervened in the negotiations between their broker, Feeley, and his prospective purchasers, the Paynes, and completed the sale through another broker, Hagglund, is the only inference that can be drawn from the facts as found by the trial court. Was that intervention in good faith, as claimed by the appellants, in the belief that Feeley had abandoned his negotiations with the Paynes?

By the sale through Hagglund, the Mullikins saved $150 on the commission and secured an additional $1,000 on the purchase price over the terms they had given Feeley. They had refused to sell in February, 1952, when Feeley advised them that the Paynes were then in a position to meet their terms, and they then told Feeley that they did not want to sell until after June 1st. They subsequently made the sale

within the period during which they had told Feeley they would not sell, and to the very prospects whom he had introduced to them. They gave Feeley no notice of their negotiations with his prospects and no opportunity to consummate the sale or to protect his commission. Appellants' contention that Feeley had abandoned his efforts to sell the Stonecliff lease to the Paynes is contrary to the unchallenged finding of fact that Feeley continued his efforts to effect its sale to the Paynes from the time he first showed the apartment house to them until he learned that the sale had been made. That he may not have been pressing the matter when the sale was made through Hagglund is understandable in view of the statement by the Mullikins that they did not want to sell until June 1st.

■ The trial court made no specific finding of bad faith but, after including the matters to which we have just referred in its findings, it made this final finding as to the ultimate facts:

"That the plaintiff [respondent Feeley] was prevented and deprived of the opportunity of consummating the sale of defendants [appellants Mullikin] apartment house business to plaintiff's prospective purchasers, Bogle and Redith Payne, by the acts of the defendants; that the defendants, in order to benefit themselves financially, sold their property through another broker without the right so to do."

This amounts to a finding of bad faith, and Feeley, having been deprived of the opportunity to consummate the sale, must be considered, as between these litigants, as having been the procuring cause of the sale and entitled to his commission. The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

June 9, 1954. Petition for rehearing denied.