# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KIDDER MATHEWS & SEGNER, INC., a Washington corporation, | NO. 68066-8-I |
| Respondent, | DIVISION ONE |
| v. | |
| HARBOR MARINE MAINTENANCE & SUPPLY, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Appellant. | FILED: April 1, 2013 |

LEACH, C.J. — Harbor Marine Maintenance & Supply Inc. appeals the trial court's entry of summary judgment in favor of Kidder Mathews & Segner Inc. for a brokerage fee claimed under a client representation agreement and its denial of Harbor's motion for reconsideration. Harbor signed a client representation agreement with Kidder requiring Kidder to assist Harbor with securing a property lease to relocate its business. After Harbor signed a lease, Kidder sued Harbor to recover a brokerage fee under the agreement. Because Harbor fails to show that a genuine issue of material fact exists regarding Kidder's right to the brokerage fee, we affirm.

FACTS

Harbor Marine Maintenance & Supply Inc. sells marine equipment and provides marine repair and maintenance services. Kidder Mathews & Segner Inc. provides commercial brokerage services.

Harbor leased business space at the Everett Marina from the Port of Everett (Port) for approximately 30 years. In 2008, the Port terminated Harbor's lease to accommodate the Port's redevelopment plans. Harbor learned that Norton Industries owned a nearby property that might be available to lease. Harbor president Lauren Bivins spoke periodically with Norton president Jim Schack from 2008 until December 2009 about the property's potential availability. In December 2009, Bivins concluded that the Norton property would not be available to lease and began negotiating with the Port to lease a different property.

After Harbor's negotiations with the Port failed, Harbor's attorney suggested that Bivins contact Kidder to assist with the negotiations. The attorney introduced Bivins to Kidder broker Matthew Henn. On January 29, 2010, Henn and Matthew Hagen, another Kidder broker, presented Harbor with Everett area lease comparables, including details on four available properties. On February 1, Bivins signed a client representation agreement (CRA) with Kidder. The agreement states,

Harbor Marine, Inc. shall hereinafter be referred to as "Client." Owner or Owner's agent shall hereinafter be referred to as "Owner." It is hereby confirmed that GVA Kidder Mathews, hereinafter referred to as "Agent," exclusively represents Client.

It is hereby confirmed that in the event of the consummation of a lease renewal, new lease, or purchase of a facility, Client hereby requires that a brokerage commission in consideration of brokerage services rendered shall be paid by Owner to Agent.

Henn submitted to the Port a series of lease proposals. When these negotiations with the Port stalled, Bivins asked Henn to research alternative properties. Henn and Hagen subsequently asked Schack if a property that Norton owned—the same property that Bivins considered previously—might be available to lease. Schack informed them that the building was currently unavailable but that it might soon become available. Schack asked them to place the building on the list of properties for Harbor to consider.

On March 24, 2010, Henn and Hagen met with Harbor's attorney, Harbor's accountant, and Bivins. Bivins was surprised to learn that the Norton property was available. That day, he toured the building with Henn and Hagen.

On March 31, Bivins met with Schack to discuss a possible lease, without informing Kidder. On April 27, after learning about the negotiations, Henn sent Bivins an e-mail stating, "Tomorrow I will email you a copy of our representation agreement. You might want to talk with [J]im that he is legally required to pay a

fee unless you would rather pay the fee. In the meantime, we will stall w[ith] the Port." On May 21, Harbor signed a lease agreement with Norton.

In November 2010, Kidder sued Harbor in Snohomish County Superior Court to recover the brokerage fee. The court granted Kidder's motion for summary judgment and subsequently denied Harbor's motion for reconsideration. Harbor appeals.

## STANDARD OF REVIEW

We review de novo a trial court's summary judgment order. We engage in the same inquiry as the trial court, considering the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[1] "Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

## ANALYSIS

Harbor claims that Kidder must be the procuring cause of a lease to be entitled to a brokerage fee. Kidder contends, and the trial court agreed, that the procuring cause rule does not apply because the applicable CRA provision

---

[1] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

[2] Phillips v. King County, 136 Wn.2d 946, 956, 968 P.2d 871 (1998); CR 56(c).

provides a lesser standard for liability for a commission. Harbor also contends that it raises a genuine issue of material fact regarding Kidder's right to a brokerage fee under the CRA. Because undisputed evidence establishes that Kidder should be considered the procuring cause of the lease, we affirm the trial court without resolving the parties' dispute over the meaning of the controlling contract language.

Under the procuring cause rule, "when a party is employed to procure a purchaser and does procure a purchaser to whom a sale is eventually made, that party is entitled to a commission regardless of who makes the sale."[3] A broker is the procuring cause of the sale "if it sets in motion a series of events culminating in the sale and, in doing so, accomplishes what the broker undertook under the agreement."[4] It is not enough to locate the purchaser; the broker's efforts must have actually led to the transaction on which the broker claims a commission.[5]

Harbor contends that Kidder was not the procuring cause of the lease because it did not have "the required 'minimal causal relationship' that resulted in the eventual lease." We disagree.

---

[3] Wash. Prof'l Real Estate, LLC v. Young, 163 Wn. App. 800, 809, 260 P.3d 991 (2011) (citing Prof'ls 100 v. Prestige Realty, Inc., 80 Wn. App. 833, 836-37, 911 P.2d 1358 (1996)), review denied, 173 Wn.2d 1017, 272 P.3d 247 (2012).

[4] Wash. Prof'l Real Estate, 163 Wn. App. at 810 (citing Roger Crane & Assocs. v. Felice, 74 Wn. App. 769, 776, 875 P.2d 705 (1994)).

[5] Roger Crane, 74 Wn. App. at 776-77.

Bivins testified that before Henn presented Harbor with information about the Norton property, he believed that the property was unavailable. Except for the size of the building on the property, he had no information about the building, not even its current rent. Immediately after Henn presented the Norton property information, Bivins and Henn viewed the building together. On March 31, 2010, less than one week after Henn provided detailed information about the Norton property to Harbor, Bivins began separate negotiations with Schack. When Bivins discussed the brokerage fee with Schack, Schack refused to pay it. After learning of the negotiations between Bivins and Schack, Henn sent an e-mail to Bivins, in which he wrote, "Matt Hagen left Jim voicemails on both April 15th and again on April 21st to confirm" whether or not the building was available to lease, "with no return call." Harbor did not inform Kidder about its negotiations and gave Kidder "no opportunity to consummate the sale or to protect his commission."[6]

Nothing in the record indicates that Kidder abandoned its efforts to negotiate a lease with Schack. The undisputed evidence shows that Kidder tried continuously to procure a lease agreement with Schack from the time Kidder first showed Harbor the property until Kidder learned about the separately negotiated lease.[7] "[W]hen the owner in bad faith deprives the broker of the opportunity of

---

[6] Feeley v. Mullikin, 44 Wn.2d 680, 688, 269 P.2d 828 (1954).
[7] See Feeley, 44 Wn.2d at 688.

-6-

consummating the sale to a purchaser whom he has produced and with whom he is negotiating, the broker may be considered as the proximate and procuring cause of the sale as a matter of law."[8] Because the undisputed facts in this case establish Harbor's bad faith effort to deprive Kidder of the opportunity to consummate the lease, we consider Kidder the procuring cause of the lease as a matter of law and entitled to a commission.

Harbor cites Lloyd Hammerstad, Inc. v. Saunders[9] and Roger Crane & Associates v. Felice[10] to show that Kidder was not the procuring cause of the lease. Neither case supports Harbor's position because neither involved a similar fact pattern. Neither case involves a party who engaged a broker and then attempted to avoid a commission obligation by consummating a transaction behind the broker's back.

Harbor also alleges that the parties did not intend for it to pay the commission to Kidder. The pertinent CRA language states, "It is hereby confirmed that in the event of the consummation of a lease renewal, new lease, or purchase of a facility, Client hereby requires that a brokerage commission in consideration of brokerage services rendered shall be paid by Owner to Agent." Harbor claims that this plain language, Henn's representations before Harbor

---

[8] Feeley, 44 Wn.2d at 686.
[9] 6 Wn. App. 633, 495 P.2d 349 (1972).
[10] 74 Wn. App. 769, 875 P.2d 705 (1994).

signed the CRA and during lease negotiations, and "the undisputed evidence that even Kidder believed that the CRA obligated the owner of the property, not Harbor, to pay any commission that would result from the lease agreement" all support its interpretation.

Kidder responds that the CRA's unambiguous terms state that Harbor must require the "Owner" (here, Norton) to pay the commission. It asserts that Harbor breached the CRA by negotiating a lease that did not require Norton to pay the commission and by refusing to pay the commission itself.

When a court interprets a written contract, its purpose is to determine the parties' intent.[11] The court applies the "context rule," which allows it to consider extrinsic evidence to ascertain the parties' intent and to interpret the contract.[12] Regardless of whether the contract language is ambiguous, the court may consider (1) the contract's subject matter and objective, (2) the circumstances surrounding the contract's formation, (3) the parties' subsequent conduct, (4) the reasonableness of the parties' respective interpretations, (5) the parties' statements made in preliminary negotiations, (6) usages of trade, and (7) the

---

[11] Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 310, 119 P.3d 854 (2005) (citing U.S. Life Credit Life Ins. Co. v. Williams, 129 Wn.2d 565, 569, 919 P.2d 594 (1996)).

[12] Spectrum Glass, 129 Wn. App. at 311 (citing Williams, 129 Wn.2d at 569).

course of dealing between the parties.[13] While a court may consider extrinsic evidence to interpret a contract,

> "[a]dmissible extrinsic evidence does not include (1) evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term, (2) evidence that would show an intention independent of the contract, or (3) evidence that varies, contradicts or modifies the written language of the contract."[14]

"'[S]ummary judgment is not proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two "or more" reasonable but competing meanings.'"[15] But a contract provision's interpretation presents a question of law when its interpretation does not depend upon the use of extrinsic evidence or the extrinsic evidence leads to only one reasonable inference.[16] "Therefore, 'summary judgment is proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.'"[17]

We agree with Kidder that the CRA's language is not ambiguous. The CRA obligated Harbor to include a provision in the lease agreement requiring the

---

[13] Spectrum Glass, 129 Wn. App. at 311 (citing Berg v. Hudesman, 115 Wn.2d 657, 666-68, 801 P.2d 222 (1990)).

[14] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 84, 60 P.3d 1245 (2003) (quoting Bort v. Parker, 110 Wn. App. 561, 574, 42 P.3d 980 (2002)).

[15] Go2Net, 115 Wn. App. at 83 (quoting Hall v. Custom Craft Fixtures, Inc., 87 Wn. App. 1, 9, 937 P.2d 1143 (1997)).

[16] Spectrum Glass, 129 Wn. App. at 311 (citing Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)).

[17] Go2Net, 115 Wn. App. at 85 (quoting Hall, 87 Wn. App. at 9).

owner to pay the commission. Harbor does not dispute that it did not include such a provision. Therefore, Harbor must pay Kidder's resulting damages, the commission that it should have required Norton to pay Kidder. Harbor offers no plausible basis to conclude that the CRA's language alone bound Norton to pay the commission or that Harbor was not required to pay when it entered into a lease that did not require Norton to pay a brokerage fee.

Both parties request attorney fees on appeal. The CRA states, "If Agent employs an attorney to enforce any of the terms of this agreement, and is successful either in whole or in part, whether by trial or otherwise, Owner agrees to pay the attorney's fees and costs incurred by Agent." RCW 4.84.330 allows a party that prevails in an action to enforce a contract to enforce such a provision for attorney fees and costs.[18] We award reasonable attorney fees and costs to Kidder because Kidder has prevailed in this action to enforce its contract with Harbor.

## CONCLUSION

Because Harbor fails to show a genuine issue of material fact exists regarding its commission obligation to Kidder under the CRA, we affirm the trial

---

[18] Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wn. App. 188, 197, 692 P.2d 867 (1984).

NO. 68066-8-I / 11

court's summary judgment order and award costs and reasonable attorney fees to Kidder incurred on this appeal upon its compliance with applicable court rules.

_Leach, C.J._

WE CONCUR:

_Becker, J._                    _Grosse, J._

-11-