[No. 34766.    Department One.    October 29, 1959.]

F. C. MUELLER, *Appellant,* v. HAROLD SEEFRIED *et al.,*
*Respondents.*[1]

²Reported in 345 P. (2d) 389.

*Frank C. Mueller, Jr.,* for appellant.

*Robbins, Oseran & Robbins,* for respondents.

DONWORTH, J.—This is an appeal from a judgment dismissing an action for a brokerage commission, entered after the trial court sustained defendants' challenge to the sufficiency of the evidence at the close of plaintiff's case.

The case was tried to the court sitting without a jury. In this posture of the case we are required to view plaintiff's evidence in its most favorable light to determine whether there was sufficient evidence or reasonable inference therefrom to establish a *prima facie* case for plaintiff. *O'Brien v. Schultz,* 45 Wn. (2d) 769, 278 P. (2d) 322 (1954), and cases cited therein.

With the above rule to guide us, we think the evidence produced by plaintiff established *prima facie* the following facts:

On February 5, 1957, defendants employed plaintiff, a licensed real-estate broker who specialized in the sale of businesses (particularly taverns), to procure a purchaser for the sale or exchange of defendants' business known as the Sportsman's Tavern, which was located in Seattle. The parties entered into a written contract of employment entitled "NON-EXCLUSIVE AGENCY AGREEMENT," which provided in part:

"If, during the term of this agreement you shall procure a bona fide offer from a purchaser, ready, willing and able

to purchase said business and/or property at the price and upon the terms aforesaid or at any other price, or upon any other terms approved by me, I shall pay you in cash as consideration of your having listed this property and having made endeavor to sell same, a commission equal to 10% of the sales price of the property; and a like sum of money if such property or any part thereof shall be sold, transferred or exchanged thereafter within a period of 90 days after termination of this agreement to anyone sent by you or who has received information in respect thereof through you, either directly or indirectly and of whom I have had notice."

At the time this agreement was entered into, the terms of sale specified by defendants were a selling price of $17,-500 with a down payment of $6,500 cash.

Plaintiff proceeded to list and advertise defendants' tavern for sale. On or about February 15, 1957, Knight J. Higgins telephoned plaintiff's office and expressed an interest in purchasing a tavern. Plaintiff's salesman, J. L. Luckey, took Mr. Higgins and his wife, Rosetta E. Higgins (hereinafter called the Higginses), out to see the Sportsman's Tavern. As a result of this visit, the Higginses decided to buy the tavern, and plaintiff made out an earnest-money agreement, which was signed by the Higginses, whereby they offered to purchase the business for $17,500 with a down payment of $4,500 cash, $1,000 of which they deposited with plaintiff immediately.

Mr. Luckey then took the earnest-money agreement to defendants for their approval and acceptance. Mr. Seefried objected to a provision therein which required the seller to procure the consent of the lessor to the assignment of the seller's lease. Plaintiff thereupon made out a new earnest-money agreement containing the same terms of sale as the original earnest-money agreement, but in which the provision relating to assignment of the lease was changed so that the only requirement was that the seller use his best efforts to attempt to obtain lessor's consent to the assignment. Mr. Seefried then signed this earnest-money agreement, but insisted that Mr. Luckey make the following notation at the bottom of the page:

"Subject to Mr. Frank C. Mueller Co. Broker accepting a cash commission of $1100.00 cash [signed] J. L. Luckey Salesman."

Plaintiff then telephoned Mr. Seefried and endeavored to persuade him to abide by their agency agreement whereby appellant was to receive a commission of ten per cent of the selling price (*i.e.* $1,750). Plaintiff even offered to take a note for a portion of the commission. However, Mr. Seefried refused to recede from his demand for a reduction in the commission and stated, "you take the eleven hundred dollars, or you take nothing." The conversation terminated with plaintiff's requesting Mr. Seefried to reconsider the matter.

On February 19, 1957, Mr. Higgins came into plaintiff's office and demanded his $1,000 deposit, which was returned to him. Under the terms of the earnest-money agreement signed by the Higginses, plaintiff was required to refund their deposit in the event defendants did not accept their offer within three days (which had then elapsed).

Six days thereafter, defendants, on February 25, 1957, sold their tavern to the Higginses through another broker for $17,000 with a down payment of $4,500 cash. This broker was paid a commission of $600. This sale was consummated while the agency agreement with plaintiff was still in effect and without any notice being given to him.

On or about March 12, 1957, plaintiff learned of the sale to the Higginses through a notice published in a local business publication. At this time, plaintiff still had the tavern actively listed, since he had never received from defendants any notice of the sale or of any termination of the agency agreement as specified therein.

Thereafter, plaintiff made demand upon defendants for his commission of $1,700 (ten per cent of the ultimate selling price), which was refused by defendants. Plaintiff then instituted this suit to enforce payment.

At the close of plaintiff's case, the trial court sustained defendants' challenge to the sufficiency of the evidence, rendered an oral opinion and entered a judgment dismissing plaintiff's cause of action with prejudice.

Plaintiff assigns error to the trial court's entering the judgment of dismissal.

Hereinafter, plaintiff will be referred to as appellant and defendants as respondents.

The trial court took the view that appellant was not the procuring cause of the sale, as evidenced by the two earnest-money agreements which were placed in evidence. The court concluded its oral opinion with the following statement:

"So, the reading of Exhibit No. 4 [the earnest-money agreement signed only by the Higginses] and exhibit No. 5 [the earnest-money agreement signed only by respondents] does not show the procurement of a purchaser willing and able to purchase on the terms aforesaid, or upon any other price, or upon any other terms approved by the seller. For that reason, in the opinion of the court, the plaintiff's case falls, and judgment must be for the defendant, and for his costs."

The judgment of dismissal contained a recital that appellant's evidence had failed to show that he was the procuring cause of the sale of the tavern. We are unable to concur in the conclusion adopted by the trial court as to the insufficiency of appellant's evidence to make out a *prima facie* case. The written agency agreement between the parties did not require appellant to negotiate a valid earnest-money agreement or consummate a sale of the tavern before he was entitled to his stipulated commission.

Under the express terms of the agency agreement, appellant was only required to procure a bona fide offer from a purchaser *ready, willing, and able* to purchase respondents' tavern at the price and upon the terms originally specified by respondents *or at any other price, or upon any other terms approved by respondents*. The word "terms" has reference to the terms of sale only, and we think appellant's evidence established a *prima facie* case of full performance in accordance with the contract, *i.e.*, he procured an offer from a purchaser *ready, willing, and able* to perform, which was subsequently approved by respondents.

■ There was no requirement that appellant procure respondents' approval; he was required only to procure the purchaser's offer. The fact that the sale was ultimately consummated for a selling price of $17,000 instead of the $17,500 originally offered, would not warrant a different result. When a broker is employed to procure a purchaser who is willing to buy on certain specified terms and he procures a purchaser to whom a sale is eventually made, he is entitled to a commission irrespective of who negotiates the sale or what the terms thereof are, as long as he was the procuring cause of the sale. *Feeley v. Mullikin,* 44 Wn. (2d) 680, 269 P. (2d) 828 (1954), and cases cited therein. Appellant's evidence established *prima facie* the fact that he was the broker who interested the Higginses in respondents' tavern and that, as a result of his efforts, they were induced to make a *bona fide* offer to purchase it. Under these facts, we think it is clear that appellant was the procuring cause of the sale.

■ Furthermore, we feel that appellant's evidence established a *prima facie* case of bad faith on the part of respondents. Respondents refused to consummate the sale through appellant solely because he would not agree to accept as his commission a sum substantially less than that originally agreed upon between the parties. Thus, being unable to effect a saving in this manner, respondents attempted to avoid their obligation under their agency agreement by consummating the sale of the tavern through another broker, who did not have to "find" a prospective purchaser because appellant had already produced one. In *Feeley v. Mullikin, supra,* we quoted with approval from *Henning v. Holbrook-Blackwelder Real Estate Trust Co.,* 218 Mo. App. 433, 277 S. W. 62, as follows:

" 'If, however, the principal forestalls the agent in his efforts to consummate the sale, by refusing to sell to the prospective purchaser discovered by the agent, and afterwards opens negotiations with such prospective purchaser and sells the property to him, as in this case, the agent is entitled to his commission the same as though he had been permitted to follow up the deal to its final consummation, and in such case it is a matter of no concern whether

the principal finally consummates the sale himself or does it through other agents. If this were not so, it would become an easy matter for the principal to escape the payment of the agent's commission, while enjoying the fruits of his labors.' ''

Further along in the *Feeley* case, *supra,* we quoted with approval from *Grace Realty Co. v. Peytavin Planting Co.,* 156 La. 93, 100 So. 62, 43 A. L. R. 1096, as follows:

" 'It is true that a principal may reserve his right to sell his property at a fixed net price, and may deny to a broker the exclusive right of sale. The principal, in such event, may sell his property either directly or through any agent to a third person; but he cannot, in any case, dispose of the property to a prospective purchaser introduced by an agent and deprive the agent of his commission, either by discharging him shortly before or after the sale, or *by silently ignoring his rights in the premises.*

" 'The principal, in order to relieve himself of liability in such a contingency, must either notify the agent of the offer and give him a reasonable time to protect his commission, or he must decline the sale. Good faith and fair methods of trade require such a course of conduct, and nothing short of this will shield a principal against the payment of the commissions of the agent, unless there is a bona fide discharge of the agent, or such length of time has elapsed as to show that the effort of the agent was not a contributing cause of the sale.' (Italics ours.)''

As stated in 8 Am. Jur. 1066, § 141:

"It is a rule of universal recognition that the principal must act in good faith toward the broker, and in the event of his failure to do so the broker will not be deprived of his commissions solely by reason of his employer's breach of duty. . . . Moreover, a principal cannot deprive his agent of the compensation stipulated for, either by fraudulently making a sale himself at the same or a different price, or by switching the buyer from one agent to another with whom he himself might be more friendly, and thus open the way for the perpetration of the rankest injustice."

In conclusion, we find that appellant has established a *prima facie* case in two respects: (1) That he was the procuring cause of the sale in that he fully performed under

the terms of his contract of employment; (2) respondents have dealt with appellant in bad faith.

On this appeal, respondents urge that appellant abandoned his negotiations with the Higginses, and further, that appellant failed to act in good faith in representing his principals. From our review of the record before us, we do not find that appellant's credible evidence establishes any facts which would prevent him from recovering. On a new trial, respondents will, of course, be permitted to assert these and other defenses irrespective of our holding on this appeal.

The judgment of dismissal is reversed and the cause remanded with directions to grant appellant a new trial.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.