[No. 3195–3. Division Three. November 6, 1979.]

TOWN & COUNTRY REAL ESTATE, INC., *Appellant,* v. WILLIAM A. WALES, ET AL, *Respondents.*

*David R. Hevel* and *Olson & Olson,* for appellant.

*Richard H. Bennett* and *Terry J. Bloor,* for respondents.

GREEN, C.J.—Plaintiff appeals a judgment dismissing its action to collect a real estate commission from the defendants. Plaintiff presents two arguments in support of its right to a commission: (1) The option agreement in this case was in fact a sale; and (2) The defendants exercised bad faith in their dealings with the plaintiff and, therefore, are estopped from denying a sale.

The case presents an interesting factual situation. On December 11, 1975, the plaintiff, Town & Country Real Estate, Inc., obtained a listing agreement for the sale of a house in Richland owned by the defendant, Margaret Lee. The agreement was signed by the defendant, William Wales, who was acting as agent for L. K. Lee, a close business associate. Mr. Lee acted under the authority of a power of attorney from his wife, Mrs. Lee. On December 23, 1975, Reuben and Mary Mason signed an earnest money agreement offering to buy the listed property for $58,950, which was accepted. The earnest money agreement stated that the Masons would pay 10 percent down and obtain a conventional loan for the balance by August 1, 1976. While waiting for approval of the loan, the Masons were permitted to occupy the home beginning February 1, 1976, upon their payment of $525 a month rent. Unfortunately, they were unable to make the down payment, and the transaction did not close. The listing expired, but Mr. and Mrs. Mason continued to reside in the house as tenants.

Several months later, Mr. Wales purchased the property. On December 31, 1976, Mr. Wales and the Masons, who were still occupying the house, entered into an option

agreement. The agreement provided that the Masons would pay $1,950 to Mr. Wales for an option to purchase the home within 10 years for $58,950. The Masons would continue to occupy the home. They agreed to pay a sum each month in rent equal to the amount of their monthly payment should they decide to exercise the option. That portion of the rent which corresponded to the payment on principal would be deducted from the purchase price of the house, as well as the $1,950 which the Masons had paid for the option. The amount remaining would be due upon the exercise of the option. The Masons also assumed responsibility for the payment of fire insurance and property taxes.

When the plaintiff real estate company became aware of the option agreement, it commenced this action to collect a real estate commission from Mr. and Mrs. Lee and Mr. and Mrs. Wales. The complaint alleged that the listed property had been sold to the Masons, who had been procured by plaintiff. Following a trial, the court found that the Masons had not yet exercised their option to buy and, therefore, the court concluded that the plaintiff had not procured a sale of the property. Hence, no commission was due plaintiff. The court further found no proof of a conspiracy by the defendants to avoid paying a real estate commission to the plaintiff. Error is assigned to these findings and conclusions.

Plaintiff claims that the option agreement is, in effect, a contract for the sale of the property to a buyer whom it had procured for the defendant seller. It argues that it is entitled to a commission because the initial sale of the property to Mr. Wales was made solely for the purpose of financing the ultimate transaction and that the seller should have advised it of such alternative means of financing so that it could have closed the sale.

We decline to hold that the option agreement is a contract of sale. The fact that the option is coupled with a lease does not make it a sale before the option is exercised. Lease–option agreements are commonly recognized. *See generally Time Oil Co. v. Palmer,* 28 Wn.2d 272, 182 P.2d

695 (1947). While the lease–option agreement here contains many terms which would also be appropriate to a contract for the sale of the home, it is not thereby converted into such a contract. It is primarily distinguished from a contract of sale by the fact that the Masons have not presently agreed to purchase the home. Because they have not yet agreed to buy, they can decide to terminate their lease at any time without any penalty other than the loss of their consideration for the option. On the other hand, if the option is construed as a sales contract, and the value of the home had deflated during their occupancy, the owner's remedies would include the right to sue them for damages measured by the difference between the contract price and the home's value at the time of the breach. C. McCormick, *Damages* § 186, at 709 (1935).

The general rule is that an option contract does not entitle a broker to recover a commission in advance of a sale when the broker was employed to find a purchaser. *Lawrence v. Pederson,* 34 Wash. 1, 74 P. 1011 (1904); *Broker's Right To Commission From Principal Upon Procuring Third Party Taking An Option,* Annot., 32 A.L.R.3d 321, 327, § 3 (1970). However, the owner may be estopped from asserting the rule if he has assumed the responsibility of negotiating with the proposed purchaser and thereafter enters into an option contract in place of an immediate sale. *Duncan v. Parker,* 81 Wash. 340, 347, 142 P. 657 (1914). This exception is not applicable here. In *Duncan,* the plaintiff broker was actively pursuing a sale when the owner stepped in and took over negotiations which he ultimately concluded in an option agreement. Here, the defendant Lee gave the plaintiff every opportunity to conclude a sale with the Masons. It was only when it became evident that the Masons could not purchase the house under the terms of the earnest money agreement that it was sold to Mr. Wales.

Moreover, the defendants would not owe plaintiff a real estate commission even if this court were to construe the option as a contract for the sale of the home. The trial

court found that it was not the purpose of either the defendant Lee or the defendant Wales to avoid paying a real estate commission to the plaintiff. Substantial evidence supports this finding. Mr. Lee wanted an immediate, cash sale. He procured that from Mr. Wales without any assistance from the plaintiff. As the court found, Mr. Wales acquired the house as a tax shelter. Although his contract with the Masons furthered that purpose, the decision to buy the house was not based upon the Masons' availability to occupy it.

Plaintiff's reliance on *Feeley v. Mullikin,* 44 Wn.2d 680, 683, 269 P.2d 828 (1954), and *Mueller v. Seefried,* 54 Wn.2d 792, 797, 345 P.2d 389 (1959), is misplaced. In *Feeley* and in *Mueller,* the court applied the rule that a broker who procures a purchaser to whom a sale is eventually made is entitled to a commission regardless of who makes the sale, *if the broker was the procuring cause of the sale.* Here, the plaintiff's listing agreement was with the defendant Lee. We cannot say that the plaintiff was the procuring cause of the sale by Mr. Lee to the defendant Mr. Wales or of the alleged sale by Mr. Wales to the Masons, unless we find that Mr. Wales acted only as a strawman. In this regard, we have found there is substantial evidence to support the court's finding that defendants' motives were legitimate.

Affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied November 30, 1979.